Roy Thomas MORAN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 29A04–9203–CR–00074.

Court of Appeals of Indiana,
Fourth District.

Dec. 23, 1992.

Rehearing Denied March 2, 1993.

David M. Adams, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Deana M. McIntire, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

A month after Roy Thomas Moran (Tom), age 39, grounded his then eleven year old daughter, she complained to school officials that he—about four years previously while she was visiting him—had sexually touched her while she was showering. Her parents were divorced in 1981. After the victim's mother, who had been the custodial parent, died in an automobile accident in February, 1989, Tom moved into the former family residence and assumed custody of both the victim and her older brother. About twenty-two months after the victim complained, Tom was convicted at a bench trial of three counts of child molesting, a class C felony—fondling his daughter when she was about eight years old (she was almost thirteen at the time of the trial)—and was sentenced to three concurrent terms of six years incarceration. The trial court suspended three years of each count and placed Tom on probation for three years.

Tom asks us to reverse and vacate the trial court's decision because the trial court erroneously admitted evidence: (1) contrary to *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, which overruled *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482; and (2) of past conduct to show depraved sexual instinct. Tom also claims that the evidence was insufficient to support his convictions.

We find the trial court erred in admitting the evidence complained of. We reverse and remand for a new trial.

### FACTS

The victim in this case was born on March 16, 1979. At trial, the victim, then in the seventh grade, testified that between her second grade and fourth grade year, her father (Tom) took showers with her and rubbed the exterior of her vagina with his fingers. The incidents lasted two to five (2 to 5) minutes and her father did not use a wash cloth or soap while touching her. The victim stated that the touching stopped when she told her father that she could take showers on her own. Tom admitted taking showers with her and washing her, but stated he had used a wash cloth and soap.

The victim never told anyone, including her mother, about these events until January of 1990. On cross examination, she testified:

Q. Did at some point you got the idea that what had happened was bad or wrong?

A. Yes. Just because of programs that we have at school and stuff like that.

Q. So, was it true those programs at school that you decided that what had happened with your dad in the shower was not right?

A. Yes.

Q. How old were you when the programs started in school?

A. Probably about like the very end of my third grade and sometimes the beginning of my fourth grade, I remember having something else.

Q. And can you remember what they taught in those classes at school that made you think that what had happened was wrong?

A. There was a program called "Good Touch Bad Touch" about a big bear and a little bear. And they were talking about, they put on a play about this, the big bear touching the little bear and they talked to us about when, like, they taught us about good touches and bad touches and stuff like that.

Q. When, so based on what you had learned in school then, did you decide then that maybe your dad had done bad touches?

A. Yes.

Q. When he was doing those touches that you talked about, you, I think when [the prosecutor] talked to you, you said that he was standing behind you, is that right?

A. Yes.

Q. And it was that way every single time?

A. Most of the time, yes.

Q. And was all the time in the shower when he would come into the shower and you were in the shower, every time was he always behind you at all times?

A. I don't remember if it was all times, but I do remember that he was behind me and I suppose, yes it was all times.

Q. Did he poke you or do anything else to you when he was touching you?

A. No.

Q. Did you notice anything unusual about your dad during those times he was in the shower?

A. Nothing really unusual, no.

R. 155–157. During October of 1989, Tom's friend, Linda Carey, a single parent and mother of three, temporarily moved into Tom's home with her children while she was recovering from knee surgery. Her sixteen year old daughter shared a bedroom with the victim. Linda and her family moved out on January 21, 1990. The victim never mentioned any of the alleged acts, including the act charged in Count V (*see* n. 1), to either Linda or her daughter.

As can be expected, the victim was affected by her mother's death and the change in her living arrangements. She also stated that during the summer of 1989, her father had discussed selling the house and moving because there were too many memories associated with it and that she did not want to move. R. 121. About a year after her mother's death, during the 1989 Christmas holiday, the victim was "grounded" by Tom as discipline. The next month she complained to school officials that Tom had molested her. The school officials in turn contacted Child Protection Service. Criminal charges were filed in March, 1991.[1]

## DISCUSSION

### I. THE ADMISSION OF PATTERSON RULE EVIDENCE

Tom first claims that the trial court, during rebuttal, erroneously admitted hearsay,

---

1. Tom was originally charged with four counts of child molesting and one count of attempted child molesting. The victim testified that the events alleged in Count V—that Tom twice alleg- edly entered the victim's room while nude and attempted to pull a sheet off her—occurred one and two days before she complained. R. 121. She stated these were the events that caused her

a statement given by the victim to a caseworker (who was not at the trial) with the Hamilton County Department of Welfare. A transcript of the statement and an audio tape recording was admitted during the testimony of Suzie Watson, a supervisor with the Department. On September 26, 1991, our supreme court decided *Modesitt, supra,* which abolished the *Patterson* Rule. Tom's trial began on October 1, 1991. The record shows that the trial court was aware of *Modesitt.* Tom made a timely objection based upon *Modesitt.* After hearing argument by counsel, the trial court overruled the objection stating:

> [I]t would not have been admissible in the case in chief, because it would have been a hearsay statement and would not have fit under the exceptions. However, as rebuttal, the Court does note that there has been certainly clear reference to motive, perhaps to issues of fabrication, although maybe not so clear, but certainly under the motive issue and perhaps on the fabrication issue, it would fall into one of the exceptions which is it's a consistent statement or representing to be consistent with the prior testimony and is offered to rebut an expressed or implied charge against the declarant, or recent fabrication or improper influence or motive and it would appear that under *Modesitt,* it actually then would be admissible in rebuttal concerning that in this particular case. For those reasons, the Court will receive into evidence and overrule the objection....

R. 385–386. Tom also claims that the trial court erred by permitting Martha Donahue, a therapist at Central State Hospital, to testify as to prior conversations that she had with the victim. Tom again objected to this hearsay based upon *Modesitt* and was overruled.

In *Modesitt,* our supreme court said:

> In balance, we hold that, from this point forward, a prior statement is admissible as substantive evidence *only if the declarant testifies at trial and is subject to cross examination concerning the statement and the statement is* (a) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) *consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive,* or (c) one of identification of a person made after perceiving the person.

*Modesitt, supra,* at 653–654 (emphasis added). Thus, if the declarant can be cross examined about the statement and the statement fits either (a), (b), or (c) above, the statement is admissible.

■ It is undisputed that the evidence above came in *after* the victim had testified both during the State's case in chief and on rebuttal. Tom claims the victim had been excused and that she was no longer available for cross examination about the statements introduced by the testimony of Watson and Donahue. The record does not show whether the victim was available for recall. Tom states that for all intent and purposes she was no longer available and the State does not dispute this statement.

to make her complaint. R. 126. At the close of the State's evidence, the trial court found for the defendant on Count V, attempted child molesting, finding that the acts as alleged did not constitute a substantial step toward the commission of the offense of child molesting. The court stated that there needs "to be some effort at, particularly touching or some effort towards, a movement toward the child that's certainly not shown here." R. 265.

The victim testified that these events (Count V) happened months after Linda Carey moved out of Tom's home. R. 120–126. The victim first complained on January 22, 1990. R. 8. Linda Carey, testifying in Tom's behalf, stated that she and her family moved out on Sunday, January 21, 1990, the day before the victim complained. R. 322. Thus, the acts in Count V allegedly occurred while the victim was sharing a bedroom with Carey's sixteen year old daughter.

The court found Tom not guilty of Count I, child molesting, which allegedly occurred between January 1, and June 1, 1987. The court could not say without a reasonable doubt that the incident occurred. R. 434–435.

"Once the witness has left the stand and is not in the courtroom, he is unavailable for cross examination and his prior statements are no longer admissible." *Modesitt, supra,* at 642; *Gaunt v. State* (1983), Ind., 457 N.E.2d 211, 215.

The evidence, though denominated as rebuttal evidence, was nothing but mere repetitive hearsay. Tom did not dispute the fact that the victim had made a statement nor did he deny taking showers with her and washing her. There was nothing in this testimony that had not been introduced through the testimony of the victim. It is clear that the sole purpose of offering this evidence was to present a repetitive pattern of testimony—a drumbeat of repetition—to bolster the victim's credibility. Under the rule announced in *Modesitt,* the trial court erred in admitting the hearsay testimony of Watson and Donahue.

## II. EVIDENCE OF DEPRAVED SEXUAL INSTINCT

■ Tom claims that the trial court erred in admitting evidence of alleged past sexual misconduct. The State, over Tom's objection, introduced testimony by the victim that: (1) he allegedly scratched his penis in front of the victim and a friend of hers at some prior date; and (2) she walked into his bathroom and saw him rubbing his penis. A female classmate and friend of the victim testified that Tom allegedly exposed himself to the victim, his son, and the friend at their residence and that she saw him watching t.v. wearing a towel. A neighbor testified that Tom made a comment about finding him (Tom) a sex partner.[2] The State claims that although this testimony does not appear to meet the standards set forth in *Stewart v. State*

(1990), Ind., 555 N.E.2d 121, it is harmless and therefore, not reversible error.

In *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, our supreme court abandoned the depraved sexual instinct exception to the admissibility of prior bad acts and abrogated *Stewart.* In discussing Lannan's prior bad acts, the court quoted Justice DeBruler's dissent in *Kerlin v. State* (1970), 255 Ind. 420, 265 N.E.2d 22, 26, where Justice DeBruler said:

> There was no connection between the [prior acts] and the offense being tried. This testimony was not offered as bearing on an issue such as motive, intent, identity; nor could it evince any common scheme or plan, etc. This evidence was offered for the purpose of showing the appellant's character was bad.... As such it was inadmissible.

> Evidence of other offenses cannot be admitted merely in an attempt to show some predisposition of the accused to commit criminal acts or to establish some likelihood that he might do so. *Id.,* (De-Bruler, J., dissenting).

*Lannan* at 1339. The *Lannan* court then said: "Twenty-two years later, Justice De-Bruler has carried the day. His reasoning tracks the language of Federal Rule of Evidence 404(b), which we hereby adopt in its entirety, effective from this day forward." *Id.* In a companion case, *Pirnat v. State* (1992), Ind., 600 N.E.2d 1342, the court, referring to *Lannan,* further explained that "[i]nasmuch as Pirnat's appeal is currently pending as this new rule is announced, the rule of *Lannan* should be applied to his case." *Id.* (citations omitted).

Tom properly objected to the admission of this evidence; thus, as per *Pirnat,* the

---

**2.** Karen Huffman, Tom's neighbor, testified as follows:

Q. Did Mr. Moran ever do or say anything in your presence that was unusual or forward or perhaps of a sexual nature? R. 250
OBJECTION followed by argument.
Q. Can you state first of all when this incident might have occurred?

A. Right after Sheila [Moran's former wife] died. I asked Tom if there was anything I could do to help and he said sort of laughing, "yes, find him a sexual partner." Find him someone to have sex with. And I thought that was a little unusual, but—. R. 252
Tom and his former wife had been divorced for over eight years at the time of this alleged "depraved" act.

rule announced in *Lannan* should be applied to his case. This evidence is inadmissible.

## CONCLUSION

 In announcing its guilty verdicts, the trial court stated that:

> In regards to [the counts that Moran was convicted of], this Court does find the witness Leia Moran to be a credible witness and her testimony presents to the Court sufficient evidence *along with the other evidence in this cause* to convince the Court beyond a reasonable doubt that the defendant did commit the offenses of Child Molesting.... (Emphasis added).

R. 434–435. The court's pronouncement acknowledged that the direct evidence of guilt was not based solely upon the uncorroborated testimony of the victim and that the court required other evidence to convince it of Tom's guilt beyond a reasonable doubt. Much of the additional evidence was either inadmissible hearsay or wholly irrelevant, but damaging, inadmissible evidence of prior bad acts. To determine if the errors warrant reversal, this Court must assess the probable impact on the trier of fact. *Timmons v. State* (1992), Ind., 584 N.E.2d 1108, 1112 (jury case). Here, the case was tried without a jury. The harm arising from evidentiary error is lessened. It is only when the court's judgment has apparently or obviously been infected by erroneously admitted evidence that it should be set aside. *Roop v. State* (1991), Ind.App., 571 N.E.2d 568, 570, *reh'g denied, trans. denied.*

Here, after reviewing the trial judges own words, we find a strong indication that the judge needed the improperly admitted evidence in addition to the uncorroborated testimony of the victim to convince him of guilt beyond a reasonable doubt. We cannot say with any confidence that the trial court's judgment was not based upon this inadmissible evidence. Therefore, we reverse and vacate Tom's convictions and order a new trial.

Reversed.

CONOVER, J., concurring.

SHARPNACK, C.J., concurring with separate opinion.

SHARPNACK, Chief Judge, concurring.

I concur and note that the prior statements made by the victim and admitted by the trial court were each made after the incident which may have been a motivation for fabrication. If the account given by the victim was a fabrication, the fact that she gave it to others prior to trial would not tend to prove that it was not a fabrication. *See e.g., United States v. Davis* (7th Cir.1989), 890 F.2d 1373, 1379; *but see, e.g., United States v. Hamilton* (6th Cir.1982), 689 F.2d 1262, 1273.