**John BRIM, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 39A04–9210–CR–373 [1].**

Court of Appeals of Indiana,
First District.

Nov. 23, 1993.

Transfer Denied Jan. 12, 1994.

---

1. This case was transferred to this office on October 4, 1993, by direction of the Chief Judge.

Eugene C. Hollander, Indianapolis, for appellant-defendant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

John Brim appeals his conviction of Battery after a jury trial for which he received an enhanced eight year sentence. Brim raises five issues, none of which constitute reversible error.

## FACTS

The facts in the light most favorable to the verdict indicate that Brim and the victim, Tammy Haase, had been drinking buddies and lovers for several years. On the evening of June 24, 1990 (the night of the alleged beating), Brim and Haase had been seen having an argument at a bar. Haase's neighbor, Shawna Skirvin, observed the couple arguing and gave Haase a ride home at approximately 1:00 a.m. Upon their arrival at their apartment complex, Haase noticed that the lights in her apartment were off although earlier she had left them on. Haase began to cry and asked Skirvin if she had a beer in her apartment. Skirvin and Haase went into Skirvin's apartment where Haase had a beer. Although Haase wanted to stay up and talk, Skirvin asked that, due to the fact it was after 1:00 a.m., the talk be postponed until the following day. Haase left Skirvin's apartment to go to her own.

As will be discussed in more detail, the next morning, Haase was found in her bed unconscious, the victim of an apparent beating. At trial, Haase testified that she knew that Brim had beaten her even though she could not remember the beating. Approximately ten months after the alleged beating, Haase went to the police station and had given a recorded statement to police in which she said that Brim was in her apartment in the early morning of June 25, 1990. Brim had been angry with her because she had been dancing with another man. Brim called Haase a "whore," grabbed her hair, placed her in a head lock, and began striking her in the head with his hand. After about five blows, Haase lost consciousness.

Haase's neighbors testified that they had heard the domestic disturbance in the early morning hours of June 25, 1990. One neighbor, Tony Baker, who was acquainted with both Brim and Haase, testified he heard the couple arguing. His window was directly over Haase's patio. Shortly after 1:30 a.m., Baker heard Haase yell, "John,

leave me alone," and then heard Brim respond, "Shut the f_____ up." Baker then heard a loud "thud" against the wall.

Another neighbor testified that when he heard the commotion he looked out his window and saw a white Chevrolet Corsica parked nearby, the type of car that Brim had been driving the night of the beating.

The next morning, Brim went to Haase's apartment and found her in bed unconscious. Brim summoned an ambulance and informed emergency personnel that Haase had been injured and would not wake up. The paramedics went to Haase's apartment and found her lying on the bed in a coma. Blood and bloody towels were found throughout the apartment. The police arrived, observed, and photographed Brim's hands which were cut and swollen.

The physician who examined Haase at the emergency room testified that she was in very critical condition, her eyes were blackened, she had suffered a cut over one eye, and she was in a coma. Haase had suffered a subdural hematoma caused by bleeding within her brain. Additionally, the position of her limbs and the fact that her pupils were dilated revealed unequivocally that she had suffered brain damage.

Haase remained in a coma for approximately three months after the beating. Her mother cared for her when she came home from the hospital. Haase suffers from permanent brain damage with severe short term memory impairment. Haase has had to relearn how to speak, eat, and go to the bathroom. Two years after the beating, Haase's mother describes her as acting like she did when she was four years old.

Additional facts are supplied as necessary.

## DECISION

### I.

Whether the trial court erred in permitting the introduction into evidence of Haase's prior statement to police in which she identified Brim as her assailant?

At trial, Haase unequivocally identified Brim as the person who had beaten her. Even though she could not remember the beating, she had no doubt in her mind that Brim was the one who had beaten her. When defense counsel suggested that Haase had no independent knowledge that Brim was the one and that other people had influenced her to identify Brim as her attacker, Haase testified:

> All of it is independent knowledge. It's hard to believe but it's true. It [my memory] comes and goes you know. Like today I might remember where I put the freezer key but yet tomorrow I might not remember. You know and then 2 hours later I might remember, you know what I'm saying?

■ As previously described, approximately ten months after the beating, Haase gave a recorded statement to the police in which she recalled the details of the beating prior to her losing consciousness. In this statement, she identified Brim as the person who had beaten her.

At trial, over Brim's objection, the tape of this statement was played for the jury and the jury was provided a transcript of the statement. Haase testified that she remembered making the statement to the police but, as noted earlier, she could not actually remember the beating or the details that she had related in the statement.

■ Brim asserts the trial court erred in admitting Haase's prior statement. He argues that the statement was not admissible under *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, because Haase's memory was so severely impaired she could not be meaningfully cross-examined concerning her prior statement.

In *Modesitt*, our supreme court adopted Federal Rule of Evidence 801(d)(1) governing the admissibility of prior statements as substantive evidence. The *Modesitt* court held:

> In balance, we hold that, from this point forward, a prior statement is admissible as substantive evidence only if

the declarant testifies at trial and is subject to cross examination concerning the statement, and the statement is (a) consistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at trial, hearing, or other proceeding, or in a deposition, or (b) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (c) one of identification of a person made after perceiving the person.

Thus, if the declarant can be cross-examined about the statement and the statement fits either (a), (b), or (c) above, the statement is admissible. *Moran v. State* (1992), Ind.App., 604 N.E.2d 1258, *trans. denied.*

In a case remarkably factually similar to the case at bar, the United States Supreme Court analyzed the requirement under Fed. R.Evid. 801 that the declarant be "subject to cross-examination concerning the statement." *U.S. v. Owens* (1988), 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951. In *Owens*, a correctional officer at a prison was attacked and beaten with a metal pipe. His skull was fractured and he was hospitalized for almost a month. As a result of his injuries, the officer's memory was severely impaired. While in the hospital, the officer gave a statement to an FBI agent in which the officer described the beating and identified the defendant as the assailant. At trial, the officer remembered making the statement in the hospital. However, on cross-examination, he admitted that he could not remember having seen the person who had attacked him. He also admitted that he was unable to remember the many visitors he had received at the hospital except the FBI agent to whom he had made the statement at issue. The officer could not remember if any of these other visitors had suggested that he identify the defendant, nor could he explain hospital records which indicated that he had identified a person other than the defendant as his assailant. Our supreme court held that the Fed.R.Evid. 801(d)(1)(C) requirement that the declarant be "subject to cross-examination concerning the statement" is satisfied

where the declarant is placed on the stand, under oath, and responds willingly to questions. *Id.* 484 U.S. at 562–63, 108 S.Ct. at 844. The *Owens* court noted that the effect produced by the declarant's assertion of memory loss is often the very result sought to be produced by cross-examination and can be effective in destroying the force of the prior statement. *Id.* In disposing of the defendant's claim of a Confrontation Clause violation, the *Owens* court noted:

'The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.'

484 U.S. at 558, 108 S.Ct. at 842 (quoting from *Delaware v. Fensterer* (1985), 474 U.S. 15, 21–22, 106 S.Ct. 292, 295, 88 L.Ed.2d 15.)

We find *Owens* persuasive. In the present case, Haase was available for cross-examination to the extent that she took the stand, took an oath, and responded willingly to the questions posed to her. She recalled having made the statement to the police which incriminated Brim even though at trial she could no longer remember the actual details of the beating described in the statement. Through cross-examination, Brim effectively attacked the credibility of Haase's trial testimony as well as her prior statement to police by demonstrating her severe memory impairment. We hold, consistent with the *Owens* decision, that Haase was sufficiently available for cross-examination as required by Fed.R.Evid. 801 despite her severe memory impairment.

 Haase's prior statement also was admissible under *Modesitt* to rebut a charge of improper influence. *See gener-*

ally, *United States v. Kenney,* (9th Cir. 1990), 911 F.2d 315 (Prior statement admissible to rebut claim that prosecution was politically motivated). The defense was able to argue throughout trial that Haase's identification of Brim was not the result of her own independent knowledge but instead was the product of suggestions made by her mother and others. Also, Haase's prior statement was admissible under *Modesitt* as a prior identification. The primary purpose of the evidence of Haase's prior statement was to prove the identity of Brim as the perpetrator of the crime. *See generally, United States v. Simmons,* (2nd Cir.1991), 923 F.2d 934, *cert. denied,* —— U.S. ——, 111 S.Ct. 2018, 114 L.Ed.2d 104 (Under Fed.R.Evid. 801(d)(1)(C), a prior identification is generally admissible regardless of whether there has been an accurate in-court identification). Therefore, we find no error in the admission of Haase's prior statement.

## II.

Whether the trial court erred in permitting two witnesses to testify regarding previous beatings inflicted by Brim upon Haase?

■ Over Brim's objection, two witnesses were permitted to testify regarding previous beatings inflicted by Brim upon Haase. The first witness testified that, while working as a bartender, she had observed Brim grab Haase by the hair and bounce her head into a door frame. This same witness testified about another incident which had taken place outside another bar in which Brim had struck Haase immediately before the couple got in the car and left together. The second witness testified that in 1989, she observed Brim and Haase drinking heavily at the home of a friend.

Brim screamed at Haase, grabbed her hair, and bounced her head on the floor "like a basketball" some twenty times. This witness, a nurse, later felt Haase's head and detected fluid between her scalp and skull.

■ Before trial, the State filed a "Motion to Admit Evidence of Previous Batteries" pursuant to Ind.Code 35–37–4–14 which provides, in pertinent part:

> evidence of a previous battery is admissible into evidence in the state's case in chief for purposes of proving motive, intent, identity, or common scheme and design.

On appeal, the State argues the evidence was properly admitted under this statute.

■ However, when a statute purports to establish a rule of evidence which conflicts with a common law rule of evidence established by the Indiana Supreme Court, the supreme court rule prevails and the statute is a nullity. *Hawkins v. Auto–Owners (Mutual) Insurance Co.* (1993), Ind., 608 N.E.2d 1358; Ind.Code 34–5–2–1. Our supreme court has established evidentiary rules of law here, precisely Federal Rule of Evidence 403, retroactively adopted in *Hardin v. State* (1993), Ind., 611 N.E.2d 123, and Federal Rule of Evidence 404(b) retroactively adopted in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334. Therefore, I.C. 35–37–4–14 is a nullity and does not provide a basis upon which the evidence of the previous batteries could be admitted in the present case.[2] Nevertheless, as we find the evidence of the prior batteries properly admissible under the common law, we find no reversible error.

■ Principles of American jurisprudence insist that a defendant may not be punished for his character. *Hardin,* 611

---

**2.** Incidentally, the statute codified immediately after the statute erroneously employed in the present case, I.C. 35–37–4–15 (scheduled to become effective February 1, 1994), purports to overrule our supreme court's *Lannan,* 600 N.E.2d 1334, decision and reimpose the depraved sexual instinct exception abolished in *Lannan.* As I.C. 35–37–4–15 conflicts with the rule adopted in *Lannan,* it would also appear to be a nullity. *Hawkins,* 608 N.E.2d 1358; I.C. 34–5–2–1.

Ordinarily, we would not employ dicta to record such an observation. However, we would rather record our observation regarding I.C. 35–37–4–15 now in a footnote rather than later in reversing a child molesting conviction. Such would be the inevitable result of the legislative jurisprudence employed by our General Assembly in enacting I.C. 35–37–4–15.

N.E.2d at 127. Evidence of prior acts of misconduct will naturally give rise to the inference that the defendant is of bad character. *Id.* This, in turn, poses the danger that the jury will convict solely on this inference. *Id.* Evidence of uncharged misconduct may not be admitted to show that the defendant possesses certain character traits exhibited in the prior uncharged conduct, and that the defendant acted in conformity with those character traits in the present, charged crime. *Id.* at 128.

■ In *Lannan*, 600 N.E.2d 1334, our supreme court adopted Fed.R.Evid. 404(b) as the rule in Indiana governing the admissibility of uncharged misconduct. It reads, in pertinent part, as follows:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, ...

*Id.* at 1336 (n. 4). In *Hardin*, 611 N.E.2d 123, our supreme court adopted Fed. R.Evid. 403 which reads:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Id.* at 128. The *Hardin* court held that a trial court must employ Fed.R.Evid. 404(b) and Fed.R.Evid. 403 in conjunction with one another. *Id.* at 129. Thus, in determining whether evidence of the prior acts of misconduct may be admitted at trial, the trial court must first determine whether the evidence may be admitted for a purpose acceptable under Fed.R.Evid. 404(b), then the trial court must also apply the Fed. R.Evid. 403 balancing test to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

■ In the present case, the prior beatings are admissible to prove Brim's identity, a purpose acceptable under Fed.R.Evid. 404(b). As will be discussed under our analysis of the 403 balancing test below, the evidence of the prior beatings could not be admitted for any other purpose authorized under 404(b). The standard for evaluating 404(b) evidence offered to establish identity is particularly stringent: the physical similarities must be such as to mark the offenses as the handiwork of the accused. *United States v. Stubbins*, (11th Cir.1989), 877 F.2d 42, *cert. denied*, 493 U.S. 940, 110 S.Ct. 340, 107 L.Ed.2d 328; *United States v. Echeverri*, (3rd Cir.1988), 854 F.2d 638 (Police officer's description of the manner in which drugs had been packaged did not reveal a "signature" or trademark of defendant's organization); *United States v. Evans*, (5th Cir.1988), 848 F.2d 1352 (Evidence properly admitted when only contested issue was identity); *United States v. Lail*, (11th Cir.1988), 846 F.2d 1299. In order for 404(b) evidence to be admitted for purposes of establishing identity, the crimes must be sufficiently distinctive to constitute a modus operandi. *United States v. Stubbins*, 877 F.2d 42. To be admissible under Fed.Rules 403 and 404(b) to establish identity or modus operandi, the evidence of another crime need not be identical to the crime charged, it need only be similar and share with it elements that possess "signature quality." *United States v. Porter*, (10th Cir.1989), 881 F.2d 878, *cert. denied*, 493 U.S. 944, 110 S.Ct. 348, 107 L.Ed.2d 336. A defendant cannot be identified as the perpetrator of the charged act simply because he has at other times committed the same commonplace variety of criminal act except by reference to the forbidden inference of propensity. *United States v. Ezzell*, (9th Cir.1981), 644 F.2d 1304.

In the present case, the prior beatings were properly admissible under Fed.Rule 404(b) to establish Brim as the person who beat Haase. The prior beatings and the charged beating were similar in the following respects: 1) Haase was the victim; 2) they were alcohol related; 3) Brim grabbed Haase by the head or hair and then

"bounced" her head onto a hard surface, (door frame, floor, or wall). The jury could reasonably infer from the serious head injuries suffered by Haase during the beating that the loud "thud" heard emanating from Haase's wall the night of the beating was caused by her head. The beatings were sufficiently similar to establish the charged beating as Brim's handiwork or "signature."

Moreover, the 404(b) evidence presented to prove Brim's identity survives the 403 balancing test. The balancing of the probative value against the danger of unfair prejudice must be determined with reference to the issue to be proved by the evidence. *Johnson v. State* (1989), Ind. App., 544 N.E.2d 164, *trans. denied.* In *Johnson,* we reversed the defendant's conviction of battery because the trial court erroneously permitted evidence of Johnson's prior batteries against the victim. We noted that the prior violent acts of Johnson against the victim were of no probative value or relevance because they did not tend to prove any disputed fact in issue. *Id.* at 169. Johnson's identity was not in issue because Johnson and the victim had been lovers for years and the victim had no memory impairment. *Id.* We noted the mens rea element in a battery case, that the touching be inflicted knowingly or intentionally, cannot be an issue of serious dispute in a case of a severe beating. Moreover, we noted that the earlier acts of violence proved were "not unusual, distinctive, or similar to each other or to the present beating ... in any way." *Id.* at 171. In reversing Johnson's conviction, we held, in effect, that the evidence of uncharged misconduct could only have been admitted for the impermissible purpose of proving that Johnson was of unsavory character, that he was a wife or significant other beater.

The case at bar is readily distinguishable from *Johnson.* In the present case, the only critical factual issue that could have been (and was) seriously disputed was Brim's identity as the perpetrator of the crime. Brim had interposed an alibi defense. And, as discussed extensively under Issue I, Haase's ability to identify Brim as the crime's perpetrator was seriously undermined by the brain damage and severe memory loss she suffered from the beating. As in *Johnson,* that the battery was committed knowingly or intentionally was obvious from the injuries. Moreover, considering the dreadful and permanent injuries suffered by Haase, Brim could not seriously dispute that Haase had suffered serious bodily injury as the result of the beating. Therefore, despite the fact that Haase and Brim had been lovers for years, Brim's identity as Haase's assailant was essentially the only factual issue in dispute at trial.

Therefore, we hold the evidence of the prior beatings in the present case, eligible for admission under Fed.R.Evid. 404(b) to prove Brim's identity, survives the Fed. R.Evid. 403 balancing test. As Brim's identity as the perpetrator of the crime was hotly disputed, the probative value of the evidence of the prior beatings to prove Brim's identity was not substantially outweighed by the potential for unfair prejudice. While the jury did not receive an admonishment or limiting instruction[3] regarding the purpose for which it could use the evidence of Brim's prior acts of misconduct, the jury was properly instructed regarding the level of proof required to convict Brim of the charged beating.

Although I.C. 35–37–4–14, upon which the trial court relied to permit the introduction of the evidence that Brim had previously subjected Haase to beatings is a nullity, the evidence of the prior beatings was nevertheless admissible under the rules of evidence established by our supreme court. Therefore, we find no reversible error.

### III.

Whether the evidence was sufficient to support Brim's conviction?

Brim asserts that, assuming that Haase's prior statement was errone-

**3.** However, the use of a cautiously worded limiting instruction in cases involving evidence of uncharged misconduct is available upon request and is to be encouraged. *Wyrick v. State* (1989), Ind., 533 N.E.2d 118; *United States v. Porter,* 881 F.2d 878; *United States v. Marin–Cifuentes,* (8th Cir.1988), 866 F.2d 988; 12 MILLER, INDIANA PRACTICE § 404.200 (Supp.1993).

ously introduced into evidence as he argued under Issue I, the evidence is insufficient to support his conviction. In reviewing the sufficiency of the evidence, we consider the evidence most favorable to the verdict together with all reasonable inferences which may be drawn from that evidence and, if there is substantial evidence of probative value to support each element of the offense, the judgment will be affirmed. *Whittle v. State* (1989), Ind., 542 N.E.2d 981. We neither reweigh the evidence nor rejudge the credibility of the witnesses. *Traxler v. State* (1989), Ind.App., 538 N.E.2d 268.

Under Issue I, we held that Haase's prior statement was appropriately entered into evidence. Thus, the evidence, as outlined in the FACTS section, is clearly sufficient to support Brim's conviction.

## IV.

Whether Brim's counsel was ineffective?

 Brim asserts that he received the ineffective assistance of counsel in five instances which we review separately. In reviewing the competency of counsel, there is a presumption that counsel is competent. *Howell v. State* (1983), Ind., 453 N.E.2d 241. Strong and convincing evidence is required to rebut this presumption. *Id.* Whether counsel was incompetent revolves around the particular facts of each case. *Id.* The reviewing court will not speculate as to what may have been the most advantageous strategy in a particular case. *Id.* Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffective counsel. *Id.* The judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. *Slaton v. State* (1987), Ind., 510 N.E.2d 1343. The proper standard for attorney performance is that of reasonably effective assistance. *Cobb v. State* (1987), Ind., 505 N.E.2d 51. A successful claim of ineffective assistance of counsel has two components. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, the defendant must show that his counsel's performance was deficient, that is, that

counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.* Second, the defendant must show that the deficient performance prejudiced the defense, that is, that counsel's errors were so serious as to render the results of the trial unreliable. *Id.* Trial counsel's errors that may not individually be sufficient to establish ineffective assistance can amount to ineffective assistance when accumulated. *Williams v. State* (1987), Ind., 508 N.E.2d 1264.

### A.

 Brim complains that his attorney should have objected to the prosecutor's statement during opening argument that he would play the recording of Haase's prior statement discussed under Issue I. Brim asserts that Haase's statement was inadmissible and his attorney should have objected to any reference made to the statement.

 Before error can be found in the failure to lodge an objection, it must first be shown that any objection would have been sustained. *Hunter v. State* (1991), Ind., 578 N.E.2d 353. As decided under Issue I, Haase's prior statement was admissible. Therefore, no claim of ineffectiveness lies in Brim's counsel's failure to object to a reference made to the prior statement.

### B.

 Brim next argues that his attorney was ineffective by not objecting, moving for a mistrial, or requesting an admonishment regarding the following argument made by the prosecutor in the presence of the jury during Brim's cross-examination of a police officer:

Well, yes, Your Honor, if it is the defendant's position that that's a note he wrote and left then I think the person appropriate to authenticate it as the note he wrote and left is the defendant himself so we object to it being introduced through this witness.

\* \* \* \* \* \*

Your Honor, the State would simply add that this is evidence proffered by the defendant at the scene to this officer and he tells this officer what this is and the State would suggest that the appropriate way to enter the evidence is to have Mr. Brim who not only alleges that he wrote it but he brought it to the police's attention, the attention of the police that is, to introduce the evidence through Mr. Brim.

Brim asserts that this argument improperly placed a burden on him to testify. It is inappropriate for the State to make any reference to a defendant's failure to testify. *Bernard v. State* (1989), Ind., 540 N.E.2d 23.

Brim testified at trial. On appeal, Brim has not asserted that his decision to testify was not a part of his original trial strategy and that his decision to testify was the product of the prosecutor's inappropriate arguments made to the court. In the present case, where Brim had no significant criminal history impeding him from taking the stand, the decision for him to testify could easily have been an appropriate exercise of trial strategy. Brim in fact did testify in this case, and therefore, could not have suffered any prejudice resulting from the prosecutor's comments.

### C.

██ Brim asserts his attorney failed him by not objecting to a police officer's testimony that Brim's past behavior was "outrageous," and "disorderly" that he had been involved with "fighting" and "assaulting police," and that when Brim gets violent "he fights with you … he gets obnoxious … he is a very touchy individual." As noted under Issue II, Brim's prior acts of getting drunk and beating Haase were appropriately admitted at trial. Therefore, we cannot conclude that the result of the trial was rendered unreliable by the admission of the police officer's testimony.

### D.

██ Brim argues his attorney failed to lodge proper objections to the testimony of a police officer who was allowed to characterize and describe the video tape and photos of the crime scene rather than merely allowing the "photos to speak for themselves." Brim also argues that his attorney should not have permitted this police officer to give hearsay evidence regarding his conclusions drawn from his investigation of the crime.

Again, Brim has not demonstrated that an objection to the evidence about which he complains would have been sustained. The testimony regarding the video tape and the photographs was appropriate to explain the scenes depicted on the video tape and in the photographs. The testimony regarding the conclusions of the police officer's investigation involved merely the police officer's conclusion that Brim and Haase arrived at the bar separately the night of the crime. We cannot conclude that the admission of this evidence, which is largely cumulative of other evidence and not incriminating, rendered the result of the trial unreliable. Therefore, we find no error.

### E.

██ Brim next asserts that his attorney failed to object during his cross-examination of the State's witness, Tony Baker, who volunteered the statement that one of Haase's neighbors thought that Brim must have killed Haase. Brim asserts this statement implies that Brim and Haase had physical confrontations in the past.

We are not convinced that Baker's statement carries the implication that Brim ascribes to it. In any event, Brim's attorney very well may have elected to proceed with his examination of this witness rather than drawing the jury's attention to it by requesting an admonishment or other curative remedy. As this is an appropriate trial strategy which cannot serve as the basis for a claim of counsel ineffectiveness, we find no error.

### F.

Finally, Brim argues that although his attorney objected to the testimony regarding the prior beatings during an argument outside the presence of the jury, he did not renew his objection when the witnesses ac-

tually testified. Again we note that Brim has not demonstrated that an objection to the evidence about which he complains would have been sustained. As decided under Issue II, the evidence of the prior beatings was properly admissible. Therefore, we find no error.

## V.

### Whether Brim's sentence was manifestly unreasonable?

■■■■ Brim argues the enhanced, maximum sentence of eight years he received was manifestly unreasonable in light of his proffered mitigating circumstances. At sentencing, the trial court made the following statement:

> The reason for the imposition of the sentence is that there are no mitigating circumstances. The aggravating circumstance is the severe nature of the physical and mental damage caused the victim in this case.

■■■■■ We will not reverse a sentencing decision by the trial court if it is within statutory bounds unless it appears that the sentence was manifestly unreasonable. Ind.Appellate Rule 17(B); *Chambers v. State* (1990), Ind.App., 551 N.E.2d 1154. A sentence is not manifestly unreasonable unless no reasonable person could find such a sentence appropriate to the particular offense and the particular offender for which the sentence was imposed. App.R.17(B). Upon the imposition of an enhanced sentence the trial court must include a statement which supports the reason for selecting the sentence it rendered. *Sylvester v. State* (1990), Ind., 549 N.E.2d 37, *denial of writ of habeas corpus affirmed*, 962 F.2d 11. One valid aggravating circumstance is sufficient to support the enhancement of a presumptive sentence. *Schwass v. State* (1990), Ind., 554 N.E.2d 1127. The finding of mitigating factors is discretionary with the trial court. *Sylvester*, 549 N.E.2d 37.

The injury suffered by the victim may be considered as an aggravating circumstance

sufficient to support an enhanced sentence. *Bewley v. State* (1991), Ind.App., 572 N.E.2d 541, *trans. denied.* The trial court may consider the nature of the crime and the manner in which it was committed as aggravating factors in enhancing the presumptive sentence. *Concepcion v. State* (1991), Ind., 567 N.E.2d 784.

Considering the dreadful and permanent nature of Haase's injuries, we cannot conclude that Brim's eight year sentence is manifestly unreasonable. Therefore, we find no error.

Judgment affirmed.

BAKER and FRIEDLANDER, JJ., concur.

---

1. This case was transferred to this office on September 21, 1993, by direction of the Chief

