**Keith A. MARCHAL, Appellant–Petitioner,**

v.

**Paula (Marchal) CRAIG, Appellee–Respondent.**

**No. 49A02–9612–CV–828.**

Court of Appeals of Indiana.

June 25, 1997.

Mark Small, Swetnam & Small, Indianapolis, for appellant.

Maureen E. Gaddy, Gaddy & Gaddy, Indianapolis, for appellee.

**OPINION**

ROBERTSON, Judge.

Keith A. Marchal [Father] appeals the denial of his petition for the modification of the child custody arrangement with respect to the child born of his marriage to Paula Craig [Mother]. Father raises four issues.[1] One issue requires that we reverse and remand for retrial. We also address one aspect of Father's argument that the trial court erroneously computed his child support obli-

---

1. Father abandoned one issue in his reply brief. We note sua sponte that the trial court's findings indicate that it erroneously applied the former, more strict, standard for the modification of cus-

gation under the guidelines because that issue is likely to be reencountered at retrial.

**FACTS**

The dispositive facts are largely undisputed. Father and Mother are the parents of one child, a boy born in 1988. The parents divorced in 1991. The divorce decree, entered pursuant to a settlement agreement, provided that the parents would have joint legal custody of the child but that Father had the right to make all major decisions regarding the child, including those related to his educational training and religious upbringing. The agreement provided that the parties would share physical custody of the child on approximately a 50-50 basis.

After various conflicts and additional litigation, Father petitioned the trial court to order mediation. As a result, the parties entered into a written agreement on January 12, 1993, signed by both parties and their attorneys and entered on the court's docket, which reads in pertinent part as follows:

> With the assistance of [Dr. John Ehrmann, a clinical psychologist], the [parties] shall attempt to jointly resolve all child related issues; but that if agreement cannot be reached, Dr. Ehrman[n] has authority to resolve the dispute considering [the child's] best interests, and his resolution shall be determinative.

On April 12, 1993, Dr. Ehrmann submitted a letter to Mother's attorney which read, in pertinent part, as follows:

> I met with [Father and Mother] on March 3rd of 1993 to begin mediation per the agreed entry....
>
> * * *
>
> ... I see no other course at this point other than to move forward in a legal arena.

Mediation had failed, and the litigation resumed. Ultimately, both parties, through counsel, stipulated that Dr. Ehrmann would be an acceptable witness for both parties. Father, through counsel, had filed a proposed

---

tody. *See* Ind.Code 31–1–11.5–22(d); *VanSchoyck v. VanSchoyck*, 661 N.E.2d 1, 5 (Ind.Ct. App.1996), *trans. denied; Joe v. Lebow*, 670 N.E.2d 9, 20 (Ind.Ct.App.1996).

witness list which included Dr. Ehrmann. Later, Father, through counsel, filed a supplemental list of exhibits which included:

1. All tape recordings made by [Father] of Dr. John Ehrmann's sessions pertaining to the evaluation, mediation, and counseling of the parties herein and the minor child.

2. All correspondence, by either the mail services or by facsimile transmission from the [Father] to Dr. John Ehrmann.

Father's attorney withdrew from the case and Father proceeded to trial pro se. At trial, Father objected to the testimony of Dr. Ehrmann based upon the then effective version of Ind.Alternative Dispute Resolution Rule 2.8 which read as follows:

A person who has served as a mediator in a proceeding may act as a mediator in subsequent disputes between the parties, and the parties may provide for a review of the agreement with the mediator on a periodic basis. However, the mediator shall decline to act in any capacity, except as mediator, unless the subsequent association is clearly distinct from the mediation issues. The mediator is required to utilize an effective system to identify potential conflict of interest at the time of appointment. The mediator may not subsequently act as an investigator for any court-ordered report or make any recommendations to the court regarding the mediated litigation.

Subsection 12 (A.D.R.2.12) provided for the confidentiality of mediation communications and provided that:

... Mediators shall not be subject to process requiring the disclosure of any matter discussed during the mediation, but rather, such matter shall be considered confidential and privileged in nature. *The confidentiality requirement may not be waived by the parties, and an objection to the obtaining of testimony or physical evi-*

*dence from mediation may be made by any party or by the mediators.*

(Emphasis added).[2] The trial court overruled Father's objection to Dr. Ehrmann's testimony on the basis that the parties had stipulated that Dr. Ehrmann would be an acceptable witness for both parties.[3]

At trial, Dr. Ehrmann gave extensive evidence highly prejudicial to Father which supported Mother's request for the sole legal custody of the child. The trial court's findings and judgment, awarding sole legal custody of the child to Mother, relied extensively on the evidence provided by Dr. Ehrmann.

This appeal ensued. Additional facts are supplied as necessary.

## DECISION

### I.

*Evidence Provided by Domestic Relations Mediator*

Neither parties, nor their attorneys, may enter into a stipulation which purports to bind the trial court with respect to a question of law; and any such stipulation is a nullity. *Yelton v. Plantz,* 226 Ind. 155, 77 N.E.2d 895 (1948); *Bechert v. Bechert,* 435 N.E.2d 573, 574–75 (Ind.Ct.App.1982). A trial court commits reversible error when it enforces a stipulation, entered into by parties through their attorneys, which runs contrary to statutory provisions. *Bechert,* 435 N.E.2d at 574–75. In *Bechert,* we held that the trial court erred by accepting a stipulation entered into by the parties through their attorneys in a partition action with respect to the value of a parcel of real estate where extensive statutory provisions regulated the sale and appraisal of partitioned property. *Id.* We held further that the error was neither waived nor invited, noting that a party had raised an objection before judgment was entered and in a motion to correct error. *Id.* at

---

2. Effective March 1, 1997, A.D.R. 2 had been amended. The amended version retained the identical language providing that the confidentiality and privileged nature of mediation proceedings could not be waived. A.D.R. 2.11 (1997).

3. Mother argues that Father agreed with the trial court when his objection was overruled and thus waived the error now claimed. We have reviewed the record and interpret Father's responses to the trial court's explanation of its ruling as simply an acknowledgment of his understanding of the basis of the trial court's ruling.

575. We noted further that the statutory procedures should be enforced in order to protect the rights of all parties involved. *Id.*

The Alternative Dispute Resolution rules governing the confidentiality and privileged nature of mediation communications are unequivocal. The preamble defining the purpose of mediation states that mediation "involves the *confidential* process by which a *neutral* mediator ... assists the litigants in reaching a mutually acceptable agreement." A.D.R. 2.1 (Emphasis added). The parties to mediation seek to resolve their dispute unhindered by the threat of subsequent litigation. Bette J. Roth et al., *The Alternative Dispute Resolution Practice Guide*, § 27:1 (1995). Accordingly, the mediator should be perceived as impartial and willing to protect the confidentiality of the process. *Id.* It is therefore *essential* that the confidentiality of the process be protected on two levels—first, that which is disclosed during the private caucus sessions will not be revealed to the opponent during the mediation, and second, that which transpires during the mediation is not used in any subsequent trial or other proceeding. *Id.* In the landmark decision of *N.L.R.B. v. Joseph Macaluso, Inc.*, 618 F.2d 51 (9th Cir.1980), the court held that the public interest in maintaining the perceived and actual impartiality of mediators outweighed any benefit to be derived from the testimony which could be obtained from mediators. 618 F.2d at 54.

■ As set out above, the rules governing alternative dispute resolution strictly prohibit mediators from providing evidence in the cases they have attempted to mediate. A.D.R. 2.8 (1996). All matters discussed in mediation are strictly confidential and privileged. A.D.R. 2.12 (1996). Moreover, and dispositive in the present case, the A.D.R. rules expressly provide that the confidentiality requirement may not be waived by the parties and that an objection to the obtaining of testimony or physical evidence from mediation may be made by any party. *Id.* We must conclude that these provisions are designed to protect the integrity of the mediation process itself and that they are operational despite any attempt by the parties to override them.

■ Mother argues 1) that Dr. Ehrmann was not a mediator subject to the A.D.R. rules because he was not an attorney, and 2) that Father invited any error due to his attorney's stipulation and the fact that he had included Dr. Ehrmann on his witness list and evidence derived from mediation in his lists of exhibits to be presented at trial. First, Dr. Ehrmann, Ph.D., as a person who has a bachelor's degree from an accredited institution of higher learning, is qualified to serve as a mediator in a domestic relations case. A.D.R. 2.5(C)(1). Second, as discussed above, the A.D.R. rules provide that confidentiality may not be waived. Moreover, Father raised an objection to the evidence at trial. Therefore, we cannot conclude that error was either waived or invited. *See Bechert*, 435 N.E.2d at 575.

The A.D.R. rules involved here are designed to protect the mediation process itself. Therefore, we hold the trial court erred by permitting the introduction of Dr. Ehrmann's evidence despite the parties' former stipulation.

■ Reversible error may not be predicated upon an erroneous evidentiary ruling unless a substantial right of a party is affected. Ind.Evidence Rule 103(a). In determining whether evidentiary error requires reversal, we assess the probable impact upon the trier of fact. *Moran v. State*, 604 N.E.2d 1258, 1263 (Ind.Ct.App.1992), *trans. denied.* In a case tried before the bench, the harm caused by evidentiary error is lessened and we will reverse only when the court's judgment has apparently or obviously been infected by erroneously admitted evidence. *Id.* In *Moran*, we reversed, noting that the trial court's statements indicated that it had, in fact, relied on the erroneously admitted evidence. *Id.*

■ Similarly, in the present case, the trial court's findings relied extensively upon the evidence provided by Dr. Ehrmann. Therefore, the evidentiary error requires that we reverse and remand for retrial.

## II.

### Computation of Child Support

Mother has an older child born of a previous relationship. This child is in the custody

of his father subject to Mother's reasonable visitation. There is no order with respect to this child requiring Mother to pay child support. Nevertheless, Mother actually spends approximately $52.00 per week on expenses related to the support of this child. The trial court reduced Mother's weekly available income by this $52.00 amount in computing Father's child support obligation under the Indiana Child Support Guidelines. Father argues this deduction was inappropriate and requests that any child support obligation be computed without this deduction.

■ A trial court's calculation of a child support obligation under the child support guidelines is presumptively valid. *Marmaduke v. Marmaduke*, 640 N.E.2d 441, 443 (Ind.Ct.App.1994), *trans. denied.* Reversal of a trial court's child support order is merited only where the trial court's determination is clearly against the logic and effect of the facts and circumstances. *Kinsey v. Kinsey*, 640 N.E.2d 42, 43 (Ind.1994). On the appellate review of a child support order, weight and credibility issues are disregarded and only the evidence and reasonable inferences favorable to the judgment are considered. *Id.* at 43–44. Judges are advised to avoid the pitfall of blind adherence to the computation of guideline support without giving careful consideration to the variables that require changing the result in order to do justice. *Id.*

■ The Commentary to Ind.Child Support Guideline 3. pertaining to the computation of Weekly Adjusted Income reads in pertinent part as follows:

2. *Legal Duty to Support.* A deduction is allowed for support actually paid, or funds actually expended, for children born prior to the children for whom support is being established. This is true even though that obligation has not been reduced to a court order. The obligor bears the burden of proving the obligation and payment of the obligation.

Mother testified that she actually expends $52.00 per week for the support of her older child. Therefore, the trial court did not err in deducting this amount from Mother's weekly available income in the computation of child support under the guidelines.

## CONCLUSION

The A.D.R. strictly prohibits the use of evidence derived from unsuccessful mediation proceedings in subsequent litigation. Therefore, we reverse and remand for retrial.

Judgment reversed.

NAJAM, J., and SHARPNACK, C.J., concur.