**INDIANA DEPARTMENT OF ENVI-
RONMENTAL MANAGEMENT,
Appellant–Petitioner,**

**v.**

**ADAPTO, INC., Appellee–Respondent**

No. 49A02–9812–CV–981.

Court of Appeals of Indiana.

Oct. 19, 1999.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Stephen A. Studer, John D. Moriarty, Plews Shadley Racher & Braun, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

The Indiana Department of Environmental Management (IDEM) appeals the trial court's judgment entered in favor of Adapto, Inc. (Adapto), claiming that it erroneously determined that the parties stipulated prior to trial that they had reached a conditional agreement as to whether Adapto failed to properly register its underground storage tanks and had failed to pay certain required fees for those tanks in a timely fashion. Thus, IDEM asserts that this cause must be remanded for further proceedings so that these issues may be decided on the merits.

### FACTS

Adapto is a corporation which manufactures machine parts in South Bend. As part of an environmental audit, Adapto discovered that it owned four underground

storage tanks that had not been registered with IDEM. Pursuant to federal statute, underground storage tanks were to be registered with the State by 1986.[1] In response to the audit, Adapto proceeded to register its tanks on May 26, 1992. Thereafter, Adapto received an invoice requesting payment of the tank registration fee, which it ultimately paid.

Adapto subsequently received permission from IDEM to remove, or otherwise close, the four tanks beginning on June 27, 1992. By the end of July, Adapto had permanently closed all four tanks in accordance with the applicable regulations. During the closure procedure, however, Adapto discovered that an amount of oil had leaked from one of the tanks. Adapto reported the release to IDEM verbally and by a letter which was dated September 29, 1992. Thereafter, on January 29, 1993, Adapto submitted a claim with the Excess Liability Fund (the Fund)[2] which is administered by IDEM, seeking reimbursement for the cost of the tank removal and other expenses associated with the cleanup of the tanks. The administrator of the Fund denied Adapto's reimbursement request on March 16, 1993, alleging that Adapto had failed to comply with the State's reporting requirements regarding the storage tanks. The administrator also asserted that Adapto had not paid the required fees and further maintained that no corrective plan for Adapto had been authorized or approved. R. at 379–82, 481.

On April 3, 1993, Adapto petitioned the Office of Environmental Adjudication (OEA) for an administrative review of the denial of its request for reimbursement from the fund. The proceedings were continued indefinitely in May, 1994, while the parties negotiated the relevant issues. Throughout the course of the negotiations, the parties submitted a number of Joint Status Reports. Those reports provided that the parties had reached an agreement regarding the registration and fee payment requirements "on all issues except with respect to the definition of 'substantial compliance' under 328 IAC 1–1–9 and its application in this matter." R. at 392–96.

The administrative law judge (ALJ) ultimately determined on August 27, 1996, that the parties had stipulated to all issues except as to whether Adapto was in "substantial compliance" in accordance with the definition of that term as set forth in IND. CODE § 13–7–20–33.[3] R. at 53. The ALJ went on to conclude that Adapto had substantially complied with the appropriate regulations and was therefore eligible for reimbursement from the Fund. R. at 53, 482. The OEA ultimately entered an order on November 7, 1996, which provided in relevant part as follows:

. . .

9. Pursuant to 42 U.S.C. 6991(a), all regulated underground storage tanks must have been registered with the state by 1986. Adapto registered the four (4) underground storage tanks (UST's) on May 26, 1992. Notwithstanding, because counsel for the IDEM stipulated that Ind.Code § 13–7–20–33(d)(2) remains the only issue contested, Adapto's failure to register its tanks timely and thereby comply with Ind. Code § 13–7–20–33(d)(1) and 13–7–20–

---

1. 42 U.S.C § 6991(a).

2. The underground petroleum storage tank excess liability trust fund was created in accordance with IND. CODE § 13–23–7–1.

3. This statute has been repealed and recodified as IND. CODE § 13–23–8–4. The statute refers to the definition of "substantial compliance" under 328 IAC 1–1–9 as follows:

Substantial compliance means that at the time the release was discovered, an owner or operator was in compliance with underground petroleum storage tank laws then applicable. Proof of substantial compliance includes, but is not limited to, evidence of contractual agreements or other verifiable actions undertaken sufficiently in advance of a compliance date to provide a reasonable probability of meeting the terms of the statute or regulation.

33(d)(2)(c) cannot operate to deny Adapto's reimbursement under the [Fund]. 10. Pursuant to Ind.Code § 13–7–20–32 and § 13–7–20–33(d)(3), fees must have been paid 'each year' they were due. The State of Indiana published a fee schedule for underground storage tanks in 1988, and all owners and operators were required to pay those fees in accordance with the schedule by May 15, 1989. Adapto only paid fees for 1992–1993. Notwithstanding, because counsel for the IDEM stipulated that Ind.Code § 13–7–20–33(d)(2) remains the only issue contested, Adapto's failure to timely pay and thereby violate Ind.Code § 13–7–20–32 and § 13–7–20–33(d)(3) cannot operate to deny Adapto's reimbursement under the [Fund].

Record at 53.

On September 26, 1996, IDEM petitioned for judicial review of the OEA's decision, challenging the conclusion that the stipulation effectively precluded it from litigating Adapto's failure to register the underground storage tanks in a timely manner, along with the failure to make the required registration payments. The trial court, noting the OEA's decision, concluded that IDEM had stipulated that there was no longer any issue regarding Adapto's registration and fee payments. The trial court also determined that the language contained in the joint status reports was an intentional, knowing statement that all issues except the question of substantial compliance had been resolved, and that IDEM had waived the right to further litigate the registration and payment issues. R. at 483. IDEM now appeals from that order, contending that the trial court erroneously determined that the "substantial compliance" issue was the only question that was subject to litigation.

## DISCUSSION AND DECISION

### I. Standard of Review

■ We initially observe that judicial review of an administrative decision is lim-ited. *City of Indianapolis v. Woods*, 703 N.E.2d 1087, 1090 (Ind.Ct.App.1998), *trans. denied.* Review of an agency's decision is largely confined to the agency record and the court "may not try the case de novo or substitute its judgment for that of the agency." IND. CODE § 4–21.5–5–11; *see also Regester v. Indiana State Bd. of Nursing*, 703 N.E.2d 147, 150 (Ind.1998). Deference is to be given by the reviewing court to the expertise of the administrative body, and the decision should be reversed only if it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. *Natural Resources Comm'n v. AMAX Coal Co.*, 638 N.E.2d 418, 423 (Ind.1994). Additionally, we note that an action is arbitrary and capricious only where there is no reasonable basis for the action. *Indiana Civil Rights Comm'n v. Delaware County*, 668 N.E.2d 1219, 1221 (Ind.1996). The challenging party has the burden of proving that an administrative action was arbitrary and capricious. *Woods*, 703 N.E.2d at 1091.

■ Finally, the reviewing court should neither substitute its judgment on factual matters for that of the agency, nor reweigh the evidence. *Regester*, 703 N.E.2d at 151. Rather, the evidence is considered in the light most favorable to the administrative proceedings, and the agency's action will not be disturbed so long as there is substantial evidence to support the determination. *Id.*

### II. Effect of Stipulations

■ To resolve IDEM's claims that it did not "waive" its claim regarding further litigation of Adapto's failure to properly register its underground storage tanks and pay the required fees, we first note that a stipulation is a confessory

pleading negating the need to offer evidence to prove the fact, and the party is not permitted to later attempt to disprove the fact. *B–Dry Owners Ass'n v. B–Dry System, Inc.*, 636 N.E.2d 161, 165 (Ind.Ct. App.1994), *trans. denied.* A stipulation of facts is an express waiver by a party or his counsel of the intended issues. *Id.* Additionally, stipulations should receive a fair and liberal construction. *Marshall County Redi–Mix, Inc. v. Matthew,* 458 N.E.2d 219, 222 (Ind.1984). Where the parties to a stipulation have given a practical construction to it by their acts and conduct, such construction is entitled to great, if not controlling, weight in determining its proper meaning. *Id.*

■ In the instant case, we note that the joint status report submitted by the parties on July 15, 1994, provided as follows:

1. The parties have reached agreement on all issues except with respect to the definition of 'substantial compliance' under 328 IAC 1–1–9 and its application in this matter.

2. After several attempts to resolve this remaining issue, the parties are unable to reach agreement.

3. The parties have agreed to stipulate to certain facts and to submit briefs to this Board regarding the parties respective positions and to request this Board to render its decision on this issue.

R. at 392. The first stipulation contained in the status report quoted above is also found in two other joint status reports that the parties had submitted on June 15, 1994 and June 30, 1994. R. at 392–96. Inasmuch as IDEM expressly stipulated that the parties had reached an agreement as to all issues except for the definition and applicability of "substantial compliance" to these circumstances, the trial court could reasonably conclude that the language set forth in the joint status reports and stipulations constituted an intentional, knowing statement that the remaining issues had been resolved. Thus, the stipulation between the parties confining the issue as to

whether Adapto was in "substantial compliance" pursuant to 328 IAC 1–1–9, was binding on IDEM and it may not successfully challenge the effect of the stipulation.

■ In an effort to circumvent the effect of the stipulation, however, IDEM maintains that the provisions of Ind. Evidence Rule 408 prevented the admission of the stipulations into evidence. In relevant part, the rule states as follows:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim, which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

Here, the July status report submitted by the parties demonstrates that they agreed that settlement was not possible and that they desired to litigate only the "substantial compliance" issue. R. at 392. As a result, IDEM may not successfully assert that the stipulations were made for the purpose of compromise within the meaning of the rule. Thus, the stipulations were admissible.

Finally, IDEM maintains that the OEA's purported failure to issue a prehearing order resulted in a misunderstanding as to the meaning of the stipulation. Contrary to IDEM's assertion, we note that a detailed order scheduling a prehearing conference was issued by the OEA. That scheduling order set a prehearing conference for February 23, 1994, which was attended by counsel for both IDEM and Adapto. R. at 404–05; 482. The order also required the parties to file witness and exhibit lists and a summary of the uncontested facts and issues. R. at 404–05. Following the prehearing conference before the OEA, the parties complied with the order and stipulated to the sole contested issues. R. at 280, 392–96, 400. Moreover, IDEM never complained about the order and it did not request a clarifica-

tion of the scheduling order. Contrary to IDEM's contention, there is simply no evidence in the record suggesting that IDEM may have "misunderstood" the order. Thus, IDEM's claim must fail.

### CONCLUSION

In light of our discussion above, we conclude that the trial court correctly determined that the parties stipulated that they had reached a conditional agreement as to whether Adapto failed to properly register its underground storage tanks and had failed to pay certain required fees for those tanks in a timely fashion. Thus, the trial court properly held that the sole issue remaining for litigation was whether Adapto had "substantially complied" with the reporting requirements and the payment of fees regarding its underground storage tanks within the meaning of the statute. As a result, the trial court properly entered judgment for Adapto.

Judgment affirmed.

SHARPNACK, C.J., and MATTINGLY, J., concur.