Amanda Jayne WOODS, Appellant,

v.

Christopher Michael WOODS, Appellee.

No. 71A03–0301–CV–13.

Court of Appeals of Indiana.

May 22, 2003.

Thomas C. Sopko, Jennifer E. Davis, Sopko Nussbaum & Inabnit, South Bend, IN, Attorneys for Appellant.

Brooks J. Grainger, Krisor & Associates, South Bend, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Amanda Jayne Woods ("Wife") challenges the trial court's dissolution decree which ended her marriage to Christopher Michael Woods ("Husband"). She raises a single issue for our review, namely, whether the trial court abused its discretion when it divided the parties' marital estate. Specifically, Wife contends that the parties are obligated to reimburse her trust fund for money used to purchase the marital home and a minivan, and she maintains that the trial court abused its discretion when it did not include that alleged debt in the parties' marital estate.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Husband and Wife were married in 1994,[1] and they lived in a house that Husband had purchased prior to their marriage. In 1996, the parties decided to buy a new house in Mishawaka. Wife is the beneficiary of a trust set up by her grandparents in 1974, and Wife's father, Malcolm Tuesley, Jr., is the trustee. Husband and Wife asked Tuesley whether they might use money from the trust to purchase the new house, and Tuesley agreed. Accordingly, Tuesley executed a margin loan agreement in the amount of $164,860.50 with Baird and Company, the investment firm where Wife's trust account was maintained, and that money was used to purchase Husband and Wife's new house. Tuesley also borrowed money from the trust to purchase a new minivan for Husband and Wife. When Husband and Wife sold their old house, they paid $15,605 into the trust account.

In November 2001, Husband filed a petition for dissolution of marriage. At the evidentiary hearings, Wife and Tuesley testified that Husband and Wife had agreed to make payments to the trust towards the amounts Tuesley borrowed to purchase the house and minivan. But Wife and Tuesley admitted that no loan documents had been prepared and that no payments, other than the one-time payment of $15,605, had been made to the trust.[2] Husband testified that he and Wife had agreed to "try" to "offset any interest that may accrue" on the margin loan that Tuesley had executed to purchase the house, but he stated that they did not have enough income to make payments.

The trial court issued extensive findings and conclusions and awarded fifty-seven percent of the estate to Wife and the remainder to Husband. The trial court found, in relevant part, as follows:

> The use of Trust principal for payment of the purchase price of the Marital Home was without recourse against the parties. There is no written loan obligation and the Trust holds no mortgage encumbering the title to the Marital Home. At the time of the purchase of the Marital Home, and for the then-foreseeable future, the parties were financially unable either to make a contribution toward the cost of the Marital Home beyond the contribution represented by the proceeds from the sale of the residence Petitioner brought into the

---

1. Two children were born of the marriage.

2. Wife presented evidence that dividends earned on the corpus of the trust were expected to offset the interest accrued on the margin loan. But, due to the sluggish stock market, there were not sufficient dividends to cover the interest. Consequently, as of July 2002, "there was about $215,000 owed on that margin loan."

marriage, or to repay that obligation and live comfortably, in a manner of which the Trustee approved, on Petitioner's salary. Any ultimate depletion of the Trust corpus had the consequence of reducing the assets which would ultimately pass to the parties' children. The parties and the Trustee determined that use of the Trust principal for the purchase of the Marital Home worked to the benefit of the parties' children. The repayment obligations under the margin agreement are obligations of the Trust and not a marital liability. The Marital Home has a fair market value of $176,000. This asset shall be set over to the Respondent [Wife].

In addition, the trial court found that there "is no obligation on the part of the parties to repay the Trust for the distribution of funds used to assist in the purchase [of] the minivan." Finally, the trial court found that the trust was not a marital asset. This appeal ensued.

## DISCUSSION AND DECISION

■■■ Wife contends that the trial court abused its discretion when it found that the parties were not liable to the trust for the money used to purchase the marital home and the minivan. The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Sanjari v. Sanjari*, 755 N.E.2d 1186, 1191 (Ind.Ct. App.2001). When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal. *In re Marriage of Bartley*, 712 N.E.2d 537, 542

(Ind.Ct.App.1999). We may not reweigh the evidence or assess the credibility of witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property. *In re Marriage of Dall*, 681 N.E.2d 718, 720 (Ind.Ct.App.1997). Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Bartley*, 712 N.E.2d at 542.

Wife maintains that the evidence does not support the trial court's finding that the parties are not liable to the trust for the margin loan. But Wife merely asks us to reweigh the evidence, a task not within our prerogative on appeal. The evidence shows that Tuesley, not Husband or Wife, executed the margin loan. While there was testimony that Tuesley expected Husband and Wife to make payments to the trust, there is also evidence that Husband and Wife never made such payments, other than the one-time payment of $15,605 after the parties sold their first house. Indeed, Tuesley testified that he "never talked to either of them about [repayment] ... [because] I didn't want to create additional [financial] pressure for them." Tuesley also testified that he never requested reimbursement to the trust for the minivan. In addition, the undisputed evidence shows that the parties never executed any loan documents concerning the money used to purchase their house and minivan. When asked why the marital home was not deeded to the trust, Tuesley responded: "The trust just held a security interest in [the house].... We're family. I didn't think I needed to formalize that."[3] Tuesley and his wife provided substantial financial support to Husband and Wife without expectation of repayment.[4]

---

3. It is undisputed that there is no mortgage or other lien on the house.

4. For instance, Tuesley and his wife paid for graduate school for both Husband and Wife,

■ But Wife contends that Husband "stipulated" that they were supposed to reimburse the trust, and she maintains that the trial court was bound by that stipulation. But the only evidence Wife presents in support of that contention consists of the following excerpts from Husband's testimony:

Q: Let me rephrase the question. How much is owed on the loan on the house, Mr. Woods?

A: I honestly cannot decipher what exactly is owed on the—

Q: Okay.

A: But in my estimation it would probably be the 149 roughly that we purchased the home for. Because again I was on numerous occasions [sic] as we would discuss possible payback towards the interest, I was always assured that the interest income was offsetting the interest—or the interest debt.

\* \* \*

Q: Initially you borrowed the entire $165,000 from the trust.

A: Which process that took place I honestly don't know, whether we borrowed and then paid it back 15 or we paid it 15 I don't know but—

Q: But one way or the other the note was ultimately reduced initially down to a principle balance of around $150,000.

A: That is fair to say.

\* \* \*

Q: Now, was there a discussion concerning the repayment of that amount of money?

A: Yes, there was.

Q: Tell the Court about that.

A: There were a variety of times where we discussed, Mick Tuesley and I as well as Mandy discussed, you know, trying to make payments towards the home. But the reality of it was, you know, once we took on that expenditure or just a larger home and all of that, and Mandy then once she started becoming a full-time mom and lost that income, we just—we couldn't afford the lifestyle that we were living to make payments.

■ A stipulation is a confessory pleading negating the need to offer evidence to prove the fact, and the party is not permitted to later attempt to disprove the fact. *Indiana Dept. of Envtl. Mgmt. v. Adapto, Inc.*, 717 N.E.2d 646, 649–50 (Ind. Ct.App.1999). A stipulation of facts is an express waiver by a party or his counsel of the intended issues. *Id.* Here, while Husband acknowledged that money was borrowed from the trust, he never expressly conceded that he and Wife were obligated to make payments on that loan. He testified that they had "discussed ... trying" to make payments, but were unable to do so. And Husband's references to "the loan" do not indicate an assumption of personal responsibility. A reasonable inference can be made that Husband was referring to the loan executed by Tuesley, not a loan between Tuesley and Husband and Wife. Husband's testimony does not constitute a stipulation that he and Wife owe money to the trust.[5]

---

bought them clothing and furniture, paid credit card bills, paid for family vacations, and the like.

5. In support of her contention, Wife also cites the following testimony by Husband:

There is evidence in the record to support the trial court's finding that "[t]he use of Trust principal for payment of the purchase price of the Marital Home was without recourse against the parties." For example, when asked, "Well, did you borrow the money from the trust or did the trust just distribute to you $165,000," Husband responded, "The trust bought the home." Trial courts are obligated to divide marital property in a just and reasonable manner. *See* Ind.Code § 31–15–7–4. Here, considering that the trial court awarded the house, valued at $176,000, to Wife, and that most of the purchase price came from Wife's family trust, we cannot say that the court's division of marital property is unjust or unreasonable. We hold that the trial court did not abuse its discretion when it excluded the amount of money used to purchase the marital home and minivan from the list of the parties' marital debts.[6]

Affirmed.

BROOK, C.J., and BAILEY, J., concur.

Q   Okay. The question on the van, we've both indicated I think, you and your wife, that the van has the value of about 20 and it's subject to a loan of about 20.  Do you agree with that?
A I believe so.
Q   And the 20 is again owed back to the trust.
A Yes.

Again, a reasonable interpretation of this testimony is that Husband acknowledges that someone owes the trust $20,000, but does not expressly indicate personal responsibility for that loan.

6.  Wife also contends that Husband "testified and submitted contentions establishing that the money from the Trust for the purchase of the marital residence and the minivan were loans." Thus, Wife maintains, Husband cannot assert "for the first time on appeal" that the money for those purchases was a gift. But, for the reasons set out in our discussion above, we do not adopt Wife's characterization of Husband's testimony and contentions.