Eugenia STRATTON, Appellant–
Respondent,

v.

John L. STRATTON, Appellee–
Petitioner.

No. 02A03–0501–CV–9.

Court of Appeals of Indiana.

Oct. 4, 2005.

John P. Bullman, Bullman Law Office, Fort Wayne, IN, Attorney for Appellant.

Harry W. Foster III, Fort Wayne, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Eugenia Stratton (Mother), appeals the trial court's Decree of Dissolution of Marriage awarding physical custody of the parties' minor child, E.S., to Appellee–Petitioner, John L. Stratton (Father).

We affirm.

### ISSUES

Mother presents four issues on appeal, which we consolidate and restate as the following issues:

1. Whether Mother was deprived of due process when the trial court modified temporary physical custody of E.S. from Mother to Father;

2. Whether the trial court abused its discretion in awarding permanent physical custody of E.S. to Father; and

3. Whether the trial court abused its discretion in awarding Mother fifty-five percent of the marital assets and no attorney fees.

### FACTS AND PROCEDURAL HISTORY

On June 19, 2001, Father filed his Verified Petition for Dissolution of Marriage. The parties reached an agreement on provisional matters and the trial court entered its Order to that effect on August 16, 2001, ordering, among other things, that the parties would have joint legal custody of E.S. but Mother would be the primary custodial parent. The provisional Order stated that this custody agreement was temporary and that the trial court would not consider the agreement to provide any advantage to either party when the custody issue was litigated.

On July 1, 2002, Father filed an Emergency Motion for Modification of Custody and Visitation and Contempt of Court. On July 3, 2002, the trial court denied Father's Motion. On July 16, 2003, a pretrial conference was conducted, and a final hearing was set for September 17, 2003, as a secondary setting (the primary setting trial date being February 26, 2004). On September 4, 2003, Mother filed her Motion to Vacate Secondary Setting Trial Date, which the trial court granted that same day.

On February 26, 2004, the trial court conducted the first day of the final custody hearing, at which both parties appeared. At this hearing, Father called Mother as his first witness, and the trial court permitted Mother's counsel to treat her cross-examination as a direct examination. Father and Dr. David Lombard also testified on the first day of the hearing, and the trial court admitted into evidence the Psychological Evaluation for Custody pre-

pared by Dr. Lombard. Following the hearing, the trial court issued an Order stating that evidence was presented but the parties do not rest, and scheduled a further trial date of a half-day on January 18, 2005.

In the meantime, the trial court scheduled a status hearing to modify provisional orders for March 26, 2004. On March 26, 2004, the parties appeared for the status hearing to modify provisional orders and the cause was continued to March 30, 2004. Following the March 30 hearing, which was not recorded, the trial court issued an Order on March 31, 2004 (the March 31 Order), which reads in pertinent part as follows:

1. MODIFICATION OF TEMPORARY CUSTODY:

   1.1 The [c]ourt finds based upon a substantial change of factors, that it is in the best interest of the parties' minor child, namely: E[.S.] ... that Mother and Father shall have the temporary joint legal custody of said child.... Further, and based upon such change of factors, Father is awarded temporary primary physical custody of the child, as the best interests of the child so dictate....

   ...

2. MODIFICATION OF TEMPORARY VISITATION/PARENTING TIME

   2.1 Mother is granted access to the minor child that is afforded a non-custodial parent as provided in the Indiana Parenting Time Guidelines.

(Appellant's App. pp. 35–36).

On May 10, 2004, Father filed his Motion for Supplemental Evaluation, requesting that the trial court order Dr. Lombard to prepare a supplemental report to the court. On August 24, 2004, Mother filed her Motion to Set Aside Custody Transfer, Motion for Recusal, Motion for Appointment of Special Judge or Judge Pro Tem to Hear Custody Issues, Motion for Appointment of Guardian Ad Litem and Verified Information for Contempt. In her Motions, Mother asserted, among other things, that the trial court had a duty to set a prompt final hearing pursuant to Indiana Code section 31–17–2–6, which states that "[c]ustody proceedings must receive priority in being set for hearing." In an Order issued on September 7, 2004, the trial court denied Mother's motions, with the exception of her Verified Information for Contempt, for which a trial was scheduled on December 29, 2004. The trial court also ordered that all other pending matters would be heard on September 29, 2004, the newly-scheduled second day of trial, and that the previously-scheduled second day of January 18, 2005, be removed from the trial court's calendar.

On September 9, 2004, the trial court conducted a pre-trial conference. Following this conference, the trial court ordered that a supplemental evaluation be performed by Dr. Lombard, and the parties stipulated to the admissibility of this report to the trial court.

On September 29, 2004, the trial court conducted a half-day hearing to conclude the final hearing. On October 5, 2004, the trial court entered its Decree of Dissolution of Marriage (the Decree). In the Decree, the trial court determined that it was in the child's best interest that Father have permanent physical custody of E.S.

Mother now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Due Process*

Mother argues first that she was deprived of due process when the trial court

modified temporary custody of E.S. from Mother to Father between the first day of trial on February 26, 2004, and the second day of trial on September 29, 2004. Specifically, Mother contends that a due process violation occurred because the trial court: (1) modified temporary custody of E.S. without hearing Mother's evidence; (2) modified temporary custody when there was no emergency; (3) failed to state the reasons for the temporary custody modification; (4) gave Father a full day in court but gave Mother only a half-day; and (5) failed to prioritize the second day of trial as required by Indiana Code section 31–17–2–6.

■ At the outset, Father contends that because Mother is appealing the Decree in which the trial court granted permanent custody, this court should disregard Mother's arguments with respect to the modification of temporary custody ordered in the March 31 Order. Any challenge to the March 31 Order granting temporary custody, Father maintains, should have been raised through interlocutory appeal, pursuant to Indiana Appellate Rule 14(B). Because the Decree that Mother is appealing—the final judgment in this case—terminated the March 31 Order, Father asserts that Mother's arguments regarding the trial court's temporary modification of custody must be waived.

Mother counters by arguing that because an appeal of the March 31 Order would not have been an interlocutory appeal "of right," Mother has not waived the arguments regarding the alleged due process violation that occurred when the trial court awarded temporary custody to Father. *See* Ind.Appellate Rule 14(A). In support of this contention, Mother cites to caselaw we find to be inapposite, which states, "[A] party who fails to bring an interlocutory appeal from *the denial of a motion for summary judgment* may nevertheless pursue appellate review after the

entry of final judgment." *Keith v. Mendus*, 661 N.E.2d 26, 35 (Ind.Ct.App.1996) (emphasis added), *trans. denied.*

The trial court in this case has made a final custody determination; therefore, inasmuch as Mother is attacking the validity of the trial court's temporary custody determination, we are unable to render effective relief, and we find that the issue is moot. *See Francies v. Francies*, 759 N.E.2d 1106, 1110–11 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* Thus, we agree with Father that Mother has waived her arguments regarding the circumstances surrounding the temporary custody modification ordered in the March 31 Order.

■ Accordingly, two arguments remain: Mother's contention that the trial court gave Father a full day in court on February 27, 2004, but gave Mother only a half-day on September 29, 2004; and her contention that the trial court failed to prioritize the second day of trial, which Mother refers to as "Mother's day," as required by Indiana Code section 31–17–2–6, which provides: "Custody proceedings must receive priority in being set for hearing."

Father disputes Mother's contention that the trial court gave Father a full day of trial but gave Mother only a half-day. Specifically, Father points out that during the first day of trial on February 27, 2004, Mother's counsel was permitted to treat his cross-examination of Mother as a direct examination. The record shows that on September 29, 2004, the second day of trial, Mother had different counsel than on the first day, and Father objected numerous times on the ground that certain testimonial evidence elicited by Mother's second counsel had already been asked and answered on the first day of trial. The record also reveals that the following colloquy occurred on the second day of trial,

immediately after Mother's counsel asked her on direct examination what makes her a good mother:

[Father's counsel]: Your Honor, I know that this was already discussed and I would object, this was discussed very thoroughly with [Mother's first counsel] and myself.

. . .

[Mother's counsel]: Your Honor, just for the record, I would again indicate that [Mother] was called by [Father] as their witness, and if she testified to that, either in answering questions of [Father's counsel] or during cross-examination, I submit Your Honor, I have the right to present her as my witness in her case since she has not yet had the opportunity to testify in her case on some of these same issues, Your Honor.

. . .

[Trial court]: The record reveals that [Mother's first counsel] was given lead to treat the examination of [Mother] during his cross-examination of his own client, to treat that as direct examination.

(Tr. pp. 320–21). Accordingly, we find that Mother has mischaracterized the nature of the first day of trial. Moreover, Mother rested her case after only a half-day on September 29, 2004, and at no point on the second day of trial did Mother request more time to present evidence. Therefore, we find that she was not unfairly deprived of an equal opportunity to present evidence.

■ Finally, we consider Mother's contention that the trial court's failure to prioritize the final hearing as mandated by Indiana Code section 31–17–2–6 constitutes a violation of due process. We note that this court has previously reversed a permanent custody order where the trial court scheduled a custody hearing over fifteen months after modifying temporary custody by an *ex parte* order. *See Wilcox*

*v. Wilcox*, 635 N.E.2d 1131, 1137 (Ind.Ct. App.1994). We have also found an abuse of discretion where the trial court committed several procedural irregularities, one of which was a failure to prioritize the custody hearing as evidenced by the two-month delay between the granting of temporary custody through an *ex parte* proceeding and the final custody hearing. *See Brown v. Brown*, 463 N.E.2d 310, 314 (Ind. Ct.App.1984).

Here, however, the record reveals that the trial court modified temporary custody after the first day of trial, after considering Dr. Lombard's Psychological Evaluation for Custody and after hearing evidence from both parties. Thus, temporary custody of E.S. was not modified pursuant to an *ex parte* order; instead, Mother was given an opportunity to present evidence before the temporary modification occurred in the March 31 Order. Further, pending the final hearing, the parties had joint legal custody of E.S., and the March 31 Order specified that Mother was to be granted access to E.S. as provided in the Indiana Parenting Time Guidelines. Mother, therefore, was not denied meaningful contact with E.S. during the delay. *See Spencer v. Spencer*, 684 N.E.2d 500, 502 (Ind.Ct.App.1997), *reh'g denied*. In light of the foregoing, we cannot say that the trial court committed reversible error in scheduling the second day of trial approximately seven months after the temporary modification of custody.

## II. *Permanent Physical Custody*

Mother next contends that the trial court abused its discretion by awarding permanent custody to Father where Mother "had primary physical custody for 2¾ years before the trial, where [M]other's evidence clearly demonstrated that she was a good parent, [Father] presented no lay witnesses in support of his allegation that he was a good father, and E[.S.] pre-

ferred to live with [Mother]." (Appellant's Br. p. 24).

■ We commence our review of the Decree awarding permanent physical custody of E.S. to Father mindful that the trial court is in a better position than we are to render a decision on the merits concerning child custody. *See Pawlik v. Pawlik*, 823 N.E.2d 328, 329 (Ind.Ct.App. 2005), *trans. denied.* This is because the trial court can observe the parties' conduct and demeanor and listen to their testimony. *Id.* The value of such close proximity cannot be overstated in the matter of deciding custody, where courts are often called upon to make Solomon-like decisions in complex and sensitive matters. *Id.* at 329–30 (internal quotation omitted). Therefore, we will reverse a custody determination only if it is clearly against the logic and effect of the facts and circumstances before the trial court or the reasonable inferences drawn therefrom. *Id.* at 330. When reviewing the trial court's decision, we will not reweigh the evidence, judge witness credibility, or substitute our judgment for that of the trial court. *Id.*

■ In its Decree, the trial court stated, "The [c]ourt finds Mother to be an evasive and not credible witness, while the Father is found to be credible." (Appellant's App. p. 14). The trial court also stated, "The [c]ourt finds the testimony and reports of expert witness [Dr. Lombard] to be very persuasive." (Appellant's App. p. 14). The trial court then quoted at length in the Decree from Dr. Lombard's reports.

Mother has failed to demonstrate that the custody determination in clearly against the logic and effect of the facts and circumstances before the trial court. *See Pawlik*, 823 N.E.2d at 329–30. Instead, she urges us to reweigh the evidence that was before the trial court and to find significance in Father's failure to present supporting lay witnesses. This we will not do.

### III. *Property Division and Attorney Fees*

■ Finally, Mother contends that the trial court abused its discretion in awarding her only fifty-five percent of the marital assets and in failing to award her attorney fees. The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *DeSalle v. Gentry*, 818 N.E.2d 40, 44 (Ind.Ct.App.2004). In crafting a just and reasonable property distribution, a trial court is required to balance a number of different considerations in arriving at an ultimate disposition. *Id.* at 45. Thus, when a party challenges the trial court's division of marital property, she must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal. *Id.* at 44. We may not reweigh the evidence or assess the credibility of the witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

Indiana Code section 31–15–7–5 provides as follows:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

    (A) before the marriage; or

    (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

    (A) a final division of property; and

    (B) a final determination of the property rights of the parties.

■ Here, the record reveals that the trial court found that an equal division of the marital property would not be just and reasonable and, thus, awarded Mother fifty-five percent of the marital property. The record also establishes that on February 26, 2004, in their Agreed Entry on Property Distribution, the parties stipulated to the value of their marital assets, including the marital residence. Thus, we need not address Mother's contention that the real estate, which went to Father, was actually worth far more than the amount included in the property distribution.

Mother further contends, however, that "the trial court did not consider [Father]'s financial circumstances, which at the time of trial, included an inheritance of $100,000 . . . ." (Appellant's Br. p. 28). Yet the Decree plainly states that the trial court ordered the division of marital property "[b]ased upon the evidence, including the economic circumstances of the parties, and the earnings ability of the parties as related to a final determination of property rights[.]" (Appellant's App. p. 19). The Decree also states that "Father's inherited assets are, by stipulation, not marital assets." (Appellant's App. p. 19). In short, Mother has failed to overcome the strong presumption that the trial court considered and complied with the applicable statute, and we conclude that the trial court did not abuse its discretion in dividing the marital property. *DeSalle*, 818 N.E.2d at 44.

■ Mother also contends that the trial court abused its discretion in failing to award her attorney fees. Indiana Code section 31–15–10–1 provides that the trial court "may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article. . . ." However, the trial court's decision to grant or to deny attorney fees will not be disturbed absent an abuse of discretion. *Kovenock v. Mallus*, 660 N.E.2d 638, 643 (Ind.Ct.App.1996), *trans. denied.*

In this section of her brief, Mother cites a now-repealed statute and the "criteria for awarding attorney's fees[,]" and then asserts: "The trial court's . . . failure to assess [Mother]'s attorney's fees to [Father] was clearly erroneous, an abuse of discretion, and therefore should be reversed." (Appellant's Br. p. 28). We therefore find that Mother has failed to provide a cognizable argument with regard to her entitlement to attorney fees. *See* Ind.Appellate Rule 46(A)(8)(a).

## CONCLUSION

In light of the foregoing, we find Mother's arguments regarding the temporary custody order waived, and find that the trial court did not abuse its discretion in awarding permanent physical custody to Father, in dividing the marital property, and in denying Mother's request for attorney fees.

Affirmed.

NAJAM, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I concur with respect to Parts I and II of the majority opinion. I concur in result as to Part III but write separately to express my views concerning the validity and effect of the parties' stipulation.

It is true that a stipulation of fact constitutes a waiver by a party as to the existence of that fact. The party may not thereafter contest the fact or maintain a contrary position as to an issue which is resolved by the stipulation. *Woods v. Woods*, 788 N.E.2d 897, 901 (Ind.Ct.App. 2003). Such is true, however, only with respect to matters of fact.

It has long been established that parties to litigation may not stipulate as to the law and force a legal conclusion according to their understanding or agreement. *App v. Class*, 225 Ind. 387, 396, 75 N.E.2d 543, 548 (1947). In *Marchal v. Craig*, 681 N.E.2d 1160, 1162 (Ind.Ct.App.1997), the principle was stated as follows:

> "Neither parties, nor their attorneys, may enter into a stipulation which purports to bind the trial court with respect to a question of law; and any such stipulation is a nullity. A trial court commits reversible error when it enforces a stipulation, entered into by parties through their attorneys, which runs contrary to statutory provisions." (citations omitted).

Here, the parties purported to stipulate that husband's inheritance was not a marital asset. Such attempted stipulation is contrary to law and does not serve to remove the asset from the marital pot. *See* Ind.Code § 31–15–7–5 (Burns Code Ed. Repl.2003) (providing that in distributing the marital assets, specifically enumerating property obtained by inheritance, the court may deviate from the presumptive equal division of the property); *Hyde v.*

*Hyde*, 751 N.E.2d 761 (Ind.Ct.App.2001) (stating that an inheritance is, as a matter of law, a marital asset, but a court is within its discretion in setting aside that asset to the inheriting person).

Conversely, our case precedent permits treatment of non-marital assets as if they were marital assets if the parties so agree. In *Dusenberry v. Dusenberry*, 625 N.E.2d 458, 462–63 (Ind.Ct.App.1993), the court held that although a pending tort claim was not a marital asset, a property settlement agreement between the parties to divide that contingent claim was binding upon them as if it were a marital asset.

A holding consistent with that of *Dusenberry* is found in *Adler v. Adler*, 713 N.E.2d 348 (Ind.Ct.App.1999). There, the parties stipulated that the husband's 20% interest in the assets of a trust were to be distributed equally between the parties. The court rejected husband's assertion on appeal that the trust was not a marital asset and held the parties to the stipulation with regard to the distribution of the trust asset. *Id.* at 353.

Although, at first blush, the *Adler* decision could be construed as recognizing a stipulation that the trust was a marital asset, a more careful reading of the opinion reflects a holding that the parties were bound to an agreed division of certain property rather than a binding agreement by the parties as to a question of law, i.e., whether or not the assets of the trust were or were not marital property.

Be that as it may, the parties here were free to agree that whether or not husband's inheritance was or was not a marital asset, it was to be set over to him as his sole property. This was the effect of the Agreed Entry on Property Distribution filed by the parties and approved and entered by the trial court. It furthermore validated the trial court's decree insofar as

the decree of distribution did not set over to Eugenia any portion of John's $100,000 inheritance nor did it increase her share of the other marital assets in order to take the inheritance into consideration.

Subject to the views expressed in this separate opinion, I concur.