## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 13 2020, 11:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Allison L. Martinez Wheeler
Wheeler Law Firm, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Ryan M. Spahr
Spahr Law Office, LLC
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Paternity of A.G. (Minor Child):

A.H. (Mother),
*Appellant,*

v.

J.G. (Father),
*Appellee.*

March 13, 2020

Court of Appeals Case No. 19A-JP-2304

Appeal from the Hendricks Circuit Court

The Honorable Daniel F. Zielinski, Judge

Trial Court Cause No. 32C01-1106-JP-62

**Bailey, Judge.**

# Case Summary

A.H. ("Mother") challenges the modification of physical custody of her youngest child, A.G. ("Child"), to Child's father, J.G. ("Father").[1]  We affirm.

# Issues

Mother presents two issues for review:

    I.      Whether an interim order denied her due process; and

    II.    Whether the custody modification order is an abuse of the trial court's discretion.

# Facts and Procedural History

Child was born in 2011, and Mother and Father executed a paternity agreement providing that they would share legal custody and Mother would have primary physical custody of Child.  Father regularly exercised parenting time, commencing overnight visits after Child's infancy.  Father and Mother also began cohabitating in 2017, at a residence owned by Father, but they separated in 2018.

---

[1] Child has three older half-siblings.  Mother has her two older children in her physical and legal custody. Father's elder child lives with Father and Father's mother, without a court order for that custodial arrangement.

[4]     On June 1, 2018, Father filed an Emergency Verified Petition for Modification of Custody. Additionally, he filed an objection to Mother's relocation with Child to Martinsville, Indiana, a distance of twenty-five miles from Father's residence. A Guardian Ad Litem ("GAL") was appointed to represent Child. On July 30, 2018, the trial court conducted a telephonic status conference and the parents agreed that Child would continue to attend Mill Creek School, in Father's residential district.

[5]     On August 14, 2018, the GAL filed her first report. The GAL opined that the parents were able to cooperatively co-parent (despite some conflict and room for improvement), and the GAL would have been inclined to recommend equal parenting time, had there not been a relocation concern. She observed that the parents had recently ended their cohabitation, and Mother had experienced "recent residential instability and current financial instability." (App. Vol. II, pg. 34.) The GAL concluded,

> Ultimately, this case is very difficult to determine whether or not [Child] should be in Mother or Father's primary physical custody given the distance between their homes. If pressed, GAL has enough hesitation regarding Mother's residential and financial stability and moving [Child] to yet another school that GAL would likely recommend [Child] be in Father's primary physical custody and attend school in Mill Creek, where he is already familiar with the school from past attendance. However, the Court may see this matter otherwise once the facts are presented at hearing, and therefore, GAL has provided recommendations for parenting time in both scenarios.

*Id.* at 34-35. Shortly thereafter, Mother married, and she and her spouse purchased a residence in the Martinsville school district.

[6] On February 8, 2019, the GAL filed an updated report. She noted that Child had experienced behavioral problems at Mill Creek, as he had done in his prior school. She reiterated her opinion that Child needed a psychological evaluation and counseling, and again expressed difficulty with making a firm recommendation as to custody. She concluded with the language: "GAL believes the Court should adopt the parenting time schedule recommended under Paragraph #3 of the August 2018 recommendations to close the 2018-2019 school year so that [Child] can hopefully feel less 'stuck' in the middle for the remainder of this school year." *Id.* at 39. A custody modification hearing was scheduled for February 13, 2019.

[7] On February 11, 2019, Mother filed a motion for a continuance of the hearing. In support of the motion, she stated that: (1) Mother and Father had agreed with the GAL recommendation that Child complete his school year at Mill Creek; (2) they had agreed with the recommendation that Child complete school-based counseling through the Hamilton Center; and (3) "holding a modification hearing seems unnecessary at this time since the parties have agreed to keep the minor child in the recommended school for the remainder of the 2018-2019 school year, and that the minor child should be evaluated through the school; and therefore, [Mother] requests that the modification hearing be reset at the end of the 2018-2019 school year." *Id.* at 45-46. On the

following day, the trial court granted Mother's motion and set the matter for a hearing to be held on May 29, 2019.

[8] Having not yet received notice of the trial court's action, Father filed his objection to the motion for a continuance. According to Father, the parenting time schedule designating Father as the noncustodial parent was not sustainable until the end of the school year, given the distance between the parties. He asked that, if the court granted Mother's motion for a continuance, it also adopt Paragraph 3 of the GAL's report.

[9] After reviewing Father's objection, the trial court issued a February 12, 2019 order that was entered into the Chronological Case Summary ("CCS"), directing the parents to comply with Paragraph 3 of the GAL report. The practical effect of this action was that, during the school year, Mother had parenting time with Child one overnight per week and alternate weekends.

[10] On March 22, 2019, Mother filed a pro-se Motion for an Emergency Hearing. She advised the trial court that Child was suffering emotional harm in his current school placement and that her former attorney had requested the continuance against Mother's wishes. The trial court ordered the parties to mediation but maintained the hearing setting. Subsequently, the trial court vacated the order for mediation, the parties engaged in and filed various motions related to discovery, and the trial court ordered the parties to use a co-parenting messaging application.

[11]     On May 29, 2019, the trial court conducted the custody modification hearing, at which Mother, Father, and the GAL testified. On June 12, 2019, the trial court entered an order granting primary physical custody of Child to Father. Mother filed a motion to correct error, which was denied by the trial court on September 3, 2019.[2] Mother now appeals.

# Discussion and Decision

## Due Process

[12]     Mother contends that the order entered into the CCS on February 12, 2019 effectively granted Father temporary physical custody of Child and did so in a manner that violated Mother's right to due process. She asserts that she was summarily deprived of parenting time without an opportunity to be heard in a timely hearing.

[13]     Father concedes that the trial court's adoption of the GAL recommendation allocated time with Child in a manner akin to awarding Father temporary physical custody, but he asserts that maintaining the status quo until the end of the school year was untenable. He describes the background for the GAL recommendation as follows:

---

[2] Mother also filed an Amended Motion to Correct Error. However, an amended motion to correct error is a repetitive motion that does not extend the time for filing a notice of appeal. *See Walters v. Austin*, 968 N.E.2d 233, 235 (Ind. Ct. App. 2012).

> Despite attending school at Mill Creek, until February 12, 2019
> Child was still living primarily 37-45 minutes away with Mother.
> The onerous drive time was exacerbated by the fact that on
> Father's mid-week parenting time nights, Mother would often
> insist on picking Child up from school in Clayton and taking him
> with her back to her home in Martinsville, and then require
> Father to pick Child up from Martinsville to begin his parenting
> time, only to drive Child back again to Father's home in Clayton,
> and back yet-again to Martinsville at the conclusion of parenting
> time – all for Child to have to be driven back to Clayton for
> school in the morning.

Appellee's Brief at 17. According to Father, once the parties agreed that Mill Creek was to be Child's school for the entire school year, they had – as a practical matter – agreed that Father would provide Child's primary residence and Mother's time with Child was necessarily diminished.

[14] Due process, although not defined, embodies a concept of "fundamental fairness." *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011). Because child custody proceedings implicate the fundamental parent-child relationship, Indiana courts have recognized that procedural due process must be provided to protect the substantive rights of the parties. *Brown v. Brown*, 463 N.E.2d 310, 313 (Ind. Ct. App. 1984). In *Brown*, the mother had been granted custody in an ex parte temporary emergency order, but the cumulative effect of three procedural irregularities, including statutory non-compliance, required reversal of the custody order. *See id.* In *Wilcox v. Wilcox*, 635 N.E.2d 1131, 1136 (Ind. Ct. App. 1994), a panel of this Court reversed a custody order where Mother (exercising supervised visitation) had been "effectively removed from [her]

children's lives" and the children had been "firmly entrenched in Father's life," as Mother waited "for almost two years" before she had an opportunity to be heard.

[15] The conduct of the proceedings here was not akin to that in *Brown* or *Wilcox.* The trial court did not act based solely upon information from one party, as in an emergency ex parte order. The trial court had the benefit of the GAL report which addressed, among other things, the matter of Mother's relocation. Mother and Father had advised the trial court that they agreed with the GAL recommendations for Child's school placement and counseling. A hearing had been set to coincide with the end of the school year. The order addressed the commuting burden upon Child inherent in one parent's relocation from a particular school district. Mother was not effectively removed from Child's life, and she was not denied the opportunity to be heard for an extended period of time.

[16] And even if we consider the February 12, 2019 order to be equivalent to a temporary change of custody absent agreement, we can provide Mother no relief at this juncture, apart from our review of the merits of the final custody decision. In *Stratton v. Stratton*, 834 N.E.2d 1146, 1149 (Ind. Ct. App. 2005), this court held that once a final custody determination has been made, issues regarding a determination of temporary custody are moot. As we observed in *Stratton*, because the period of temporary custody has passed and a final determination has been made, we cannot render effective relief when a parent is

"attacking the validity of the trial court's temporary custody determination."
*Id.*

# Modification

A parent seeking modification of child custody bears the burden of proving that the existing custody order should be altered. *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016). Indiana Code Section 31-17-2-21 provides that a court may not modify a child custody order unless the modification is in the best interests of the child and there is a substantial change in one or more of the pertinent statutory factors for an initial award of custody. The factors of Indiana Code Section 31-17-2-8 include the following relevant here:

> (1) The age and sex of the child;
>
> (2) The wishes of the child's parent or parents;
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age:
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and
>>
>> (C) any other person who may significantly affect the child's best interests;

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community;

(6) The mental and physical health of all individuals involved;

(7) Evidence of a pattern of domestic or family violence by either parent …[.]

[18] Mother contends that the custody modification order is contrary to Child's best interests and that the evidence did not show a substantial change in circumstances. We review a child custody determination for an abuse of discretion. *Gonzalez v. Gonzalez*, 893 N.E.2d 333, 335 (Ind. Ct. App. 2008). In considering the facts and circumstances before it, and exercising its discretion, the trial court is not free to disregard statutory guidance. *See id.* Here, the trial court sua sponte entered findings and conclusions thereon. We will set aside a finding or the judgment only if it is clearly erroneous, that is, if there are no facts or inferences drawn therefrom to support it. *Montgomery v. Montgomery*, 59 N.E.3d 343, 349 (Ind. Ct. App. 2016). However, sua sponte findings control only with respect to the issues covered, and a general judgment standard applies to issues outside the findings, meaning that the reviewing court should affirm based on any legal theory supported by the evidence. *Steele-Giri*, 51 N.E.3d at 123-24.

[19] The order on appeal contains factual findings with respect to the parties' employment and income, together with very limited findings regarding the interaction of the parents and their interaction with Child. Specifically, the trial court found that Mother had been non-compliant with a parenting time order, had physically assaulted Father in the presence of Child, and had reported Father to Child Protective Services ("CPS"). The trial court stated, generically, that it had considered Child's age and sex, and Mother's "mental and emotional issues." Appealed Order at 1.

[20] Mother challenges the factual finding as to her non-compliance. She observes that the parties' agreement, adopted by the court in paternity proceedings, did not provide for overnight visits because Child was an infant. As such, Mother was not specifically obligated by a court order to permit Father overnight parenting time at all. The evidence of record indicates that Father and Mother had traditionally agreed upon the division of parenting time. Father testified that, after he and Mother ended their cohabitation, Mother was less cooperative. According to Father, Mother sometimes "offered more [parenting time]" to Father, sometimes offered less if he had "irritated her," and sometimes was "uncooperative with transportation." (Tr. Vol. II, pgs. 30-31.) He described his parenting time as ranging from one overnight per week to two overnights. He testified that he sometimes enjoyed less parenting time than that prescribed by the Indiana Parenting Time Guidelines. We acknowledge that the trial court found Mother non-compliant, but "it is well-settled that in order to support a modification of custody, such interference must be continuing and

substantial." *Montgomery*, 59 N.E.3d at 351. The testimony did not establish a continuing and substantial interference on Mother's part.

[21] As for the physical assault, the trial court was in the best position to make a credibility determination in the face of conflicting evidence. *See Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (recognizing that trial courts, unlike appellate courts, have the ability to observe witness demeanor and scrutinize their testimony as it is presented). A police report indicated that Father accused Mother of striking him in the face, while Mother and her then-boyfriend reported that the encounter had involved only mutual nudging with elbows. Nonetheless, Father testified at the custody hearing that Mother "hit him in the face" with Child seated nearby in Father's truck. (Tr. Vol. II, pg. 39.) The trial court credited this testimony, and we do not interfere with the credibility determination. *See In re the Marriage of Sutton*, 16 N.E.3d 481, 484 (Ind. Ct. App. 2014) (observing that we do not reweigh evidence nor judge credibility of witnesses in a child custody matter). Finally, Mother challenges the finding that ascribed fault to her for making unsubstantiated CPS reports. She complains that the trial court did not consider a report Father made to CPS regarding Mother's care or supervision of Child. Again, we cannot reweigh the evidence before the trial court. *Id.*

[22] The limited findings do not specifically address Child's familial interactions and his adjustment to his home, school, and community. We therefore look to the evidence favorable to the judgment to determine if the modification is supported by the evidence. *Id.* There was evidence that Child was bonded to

each of his parents and to his siblings in both households. He participated in sports and spent time with both paternal and maternal grandparents. His behavioral problems were significant. Child had persistently exhibited lack of control in school settings by kicking, hitting, threatening, cursing, and punching. He had once stabbed a school employee with a pencil. He threatened to bring a gun to school and kill people.

[23] Child was awaiting an evaluation to obtain an individualized education plan at Mill Creek. He was receiving psychological counseling services at Hamilton Center and behavioral coaching at his school. Father testified that the behavioral coach offered private sessions during the summer break, and Father intended that Child participate in the private sessions. The GAL testified that Child was receiving "heavy duty" services in his current school system; she didn't like the idea of Child moving from school to school; she acknowledged that she had made a "nebulous" custody modification recommendation, but, if she were "pressed," she would recommend custody be placed with Father. *Id.* at 63, 72.

[24] Mother argues that Father demonstrated no change in circumstances that was of substantial significance, and that Child's placement with Mother, who now works in a special education classroom, is in Child's best interests. Mother observes that Child has had behavioral problems in more than one school and that he could receive psychological services in her school district. We are mindful that "the effect on the child is what renders a change substantial or inconsequential." *In re Sutton*, 16 N.E.3d at 485. The GAL was appointed to

represent Child's best interests, and she expressed concern that moving Child from his current school would reward him for his acting out. She opined that either parent was fit to have physical custody of Child. However, it is not enough that the evidence might have supported a different conclusion. *Kirk*, 770 N.E.2d at 307. Rather, we will reverse only when the evidence positively requires the conclusion contended for by the appellant. *Id.* That is not the case here.

# Conclusion

Mother has not shown a deprivation of her due process rights, nor has she demonstrated an abuse of the trial court's discretion.

Affirmed.

Kirsch, J., and Mathias, J., concur.